ATTORNEYS FOR APPELLANT
Susan K. Carpenter
Public Defender of Indiana

Kevin R. Hewlate
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

_____

In the

## Indiana Supreme Court

_____

No. 48S04-0702-PC-72

ROBERT E. HARRIS,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below).*

_____

Appeal from the Madison Circuit Court, No. 48C01-0001-CF-028
The Honorable Fredrick R. Spencer, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 48A04-0601-PC-38

_____

**February 27, 2007**

**Boehm, J.**

We hold that appellate counsel is ineffective if counsel fails to provide the trial record establishing facts that support a valid claim raised in the appeal but unsupported by the record provided.

### Factual and Procedural Background

On October 9, 1999 at approximately 11 or 11:30 pm, Robert "Kwan" Harris, age 32, and his friend James Common were outside their Anderson, Indiana apartment when they met two girls, "A" and "B," who were walking home from a mall. Harris and Common invited the girls

to talk with them, and the girls walked over to the two men.  The girls told Harris and Common that they were both fifteen years old and attended Anderson High School. Harris and Common invited the girls to their apartment, and the girls agreed, thinking the men were seventeen or eighteen years old.  Once in the apartment, Harris and Common told the girls that if the girls "wanted to stay there [the girls] had to have sex with them or [they] had to leave." The girls testified that they consented to the sex because it was too far to walk to A's house and they "would of got in trouble" had they returned to B's grandmother's house that late at night.

A and Harris first went to Harris's bedroom.  Shortly after they had begun sexual intercourse, Common and B joined them and had sex on the same bed.]  When the four had finished, all returned to the living room, but after "about five minutes," the foursome "switched," and Harris took B back to his bed and had intercourse with her while Common and A remained in the living room to have sex.

The girls spent the night at the apartment and left the next morning.  A's mother and B's grandmother found the girls at the mall that morning.  The girls eventually confessed that they had been "at two guy's house" the night before.  B's grandmother called the police, and both girls went to Saint John's Hospital where rape kit samples were taken.  Both girls identified Harris's photo to Detective Benson of the Anderson Police Department as one of the men with whom they had had sex.  On January 28, 2000, Harris was charged with two counts of class B felony Sexual Misconduct with a Minor.  Ind. Code § 35-42-4-9(a)(1).  Harris's trial began on July 26, 2000.  Harris initially pleaded not guilty and presented his own testimony and the testimony of his girlfriend, Maribeth Coats, and her twin sister, Marianne Coats, all of whom claimed Harris was with his girlfriend after leaving A and B at approximately 11:00 pm on the night in question.  After this testimony the prosecutor located the sexual assault kit for B at the hospital and arranged for analysis by the Indiana State Police Laboratory.  Harris was notified that the laboratory would work overnight to do a comparison of his and Common's DNA with semen samples taken from B.  DNA analysis determined that that there was a one in 6.6 billion chance that the semen found in B's sample was not from Harris.  A's sample revealed no DNA match for Harris, but A testified that Harris wore a condom when he had sex with her.  When the DNA results became known, Harris changed his pleas to guilty on both counts.  After accepting Harris's guilty pleas, the court sentenced Harris to the maximum sentence of twenty years on each count and ordered the sentences to be served consecutively for a total sentence of forty years.

At the time of Harris's trial, Indiana Code section 35-50-1-2(c) provided that

> the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive [now advisory] sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Subsection (b) defines an "episode of criminal conduct" as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." This limitation does not prohibit consecutive sentences, but it does limit the length of the sum of the consecutive sentences. Reed v. State, 856 N.E.2d 1189, 1196 (Ind. 2006).

On direct appeal Harris challenged only the length of his aggregate sentence.[1] Harris argued that the trial court's sentence of forty years violated Indiana Code section 35-50-1-2(c) because his two Class B felonies did not involve "crimes of violence"[2] and took place in a single "episode of criminal conduct" for which the presumptive (now advisory) thirty years sentence for a Class A felony was the maximum allowed by the episode statute. Harris v. State, 749 N.E.2d 57, 59-60 (Ind. Ct. App. 2001), trans denied. Appellate counsel submitted a record consisting of the chronological case summary, information, pre-sentence report, abstract of judgment, and the transcripts of the guilty plea and sentencing hearings. The trial transcript was not included as part of the appellate record. The Court of Appeals affirmed the trial court's sentence of forty years, finding that "neither of Harris's acts of sexual misconduct was a necessary prerequisite for the other" and that "there was no other connection between the events such that a complete account of one cannot be given without referring to the details of the other." Id. at 61.

On October 3, 2001, Harris filed a pro se petition for post-conviction relief. On April 18, 2005, Harris, through appointed counsel, filed a petition for post-conviction relief, alleging that appellate counsel rendered ineffective assistance when he did not include the trial transcript as part of the appellate record. Harris pointed out that only the trial transcript included the testi-

---

[1] Harris pleaded guilty in open court without any agreement as to the sentence that would be imposed. He therefore was free to challenge the sentence on appeal, unlike the defendant in Lee v. State, 816 N.E.2d 35 (Ind. 2004).

[2] Indiana Code section 35-50-1-2(a) provides a list of those crimes that are "crimes of violence" for this purpose. It includes sexual misconduct with a minor as a Class A felony under IC 35-42-4-9(a)(2) or a Class B felony under IC 35-42-4-9(b)(2), both of which require aggravating circumstances such as the use of force. The definition does not include section 9(a)(1) under which Harris was charged.

mony of the two victims. That testimony was the only source of the facts that only five minutes passed between the two encounters, both took place in the same bed in the same apartment, and both were enticed by the same dialogue. Harris contended that the victims' testimony established that two crimes took place in a single "episode of criminal conduct" and his counsel was ineffective for failing to establish the facts necessary to reach this conclusion. After a hearing the post-conviction court denied relief, and Harris appealed. The Court of Appeals affirmed the post-conviction court's finding that counsel was not ineffective. Harris v. State, No. 4804-0601-PC-38, slip op. at 5 (Ind. Ct. App. July 7, 2006).

## I. Res Judicata

The State first contends that because Harris's sentence was reviewed on direct appeal and his crimes were held to be lawful under the episode statute the issue is res judicata. We do not agree. In Bieghler v. State, 690 N.E.2d 188, 195 (Ind. 1997), we observed that one form of appellate ineffectiveness occurs when "appellate counsel's work is so deficient that an issue, though technically raised, is deemed waived for failure to present cogent argument and/or cite facts in the record supporting the claim." (citing Goliday v. State, 526 N.E.2d 1174, 1175 (Ind. 1988); Ashford v. State, 464 N.E.2d 1298, 1302 (Ind. 1984); Burton v. State, 455 N.E.2d 938, 940 (Ind. 1983)). These claims of inadequate presentation of an issue—as opposed to failing to raise the issue at all—are generally "the most difficult" to pursue successfully. Id. However, such a claim is possible, and this case is an example. As we observed in Bieghler, a claim that counsel ineffectively presented a claim on appeal requires that the underlying issue be re-adjudicated. Id. But this does not suggest, as the State contends, that the claim is barred by res judicata. If appellate counsel's performance was so inadequate that the appellate court addressed the issue but could not properly decide it on direct appeal, res judicata cannot bar the Sixth Amendment claim. To the contrary, a conviction established by denial of the Sixth Amendment rights is void. Burgett v. Texas, 389 U.S. 109, 114-115 (1967). A claim of ineffective assistance always involves revisiting the underlying contention that is alleged to have been botched. If we were to accept the State's claim of res judicata, a claim for ineffective assistance of appellate counsel could never be brought because the resulting appellate decision upon which the prejudice prong is founded would always be final. In short, the Sixth Amendment right to counsel trumps the state law res judicata doctrine.

4

## II. Ineffective Assistance of Appellate Counsel

In reviewing claims of ineffective assistance of appellate counsel, we use the same standard applied to ineffective assistance of trial counsel claims. Taylor v. State, 717 N.E.2d 90, 94 (Ind. 1999). Strickland v. Washington, 466 U.S. 668 (1984) established that the defendant must prove (1) counsel's performance is below the objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's failure to meet prevailing professional norms, the result would have been different. Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001) (citing Strickland, 466 U.S. at 694). "Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." Id. Thus, there is a strong presumption that counsel rendered adequate assistance and used professional judgment. Id. Because all criminal defense attorneys will not agree on the most effective way to represent a client, "isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." Id. (citing Bieghler, 690 N.E.2d at 199; Davis v. State, 598 N.E.2d 1041, 1051 (Ind. 1992); Ingram v. State, 508 N.E.2d 805, 808 (Ind. 1987)).

### A. *Deficient Performance*

Harris contends that his appellate counsel was ineffective in making his claim of sentencing error because he failed to include the trial transcript. In Bieghler, we identified three categories of appellate counsel ineffectiveness claims. 690 N.E.2d at 193-95. These categories include (1) denying access to appeal, (2) waiver of issues, and (3) failure to present issues well. Id. (citing Lisa Griffin, The Right to Effective Assistance of Appellate Counsel, 97 W. Va. L. Rev. 1, 21-22 (1994)). Harris's claim falls in the third category. We have recognized that counsel's deficiency might include "failing to supply the appellate court with pertinent portions of the trial transcript." Id. at 195 (citing Burton, 455 N.E.2d at 939). Although the reviewing court may still be able to reach an issue on its merits with "less than stellar" presentation by appellate counsel, there are instances where appellate counsel's work is so deficient that the effect on the defendant is the same as if the issue was waived. Id.

At post-conviction Harris's appellate counsel testified that he did not read the record of the trial proceedings that preceded Harris's pleading guilty because

> It wasn't necessary. [Harris] was pleading guilty based on the charged [sic] against him and the factual basis from the prosecutor. If there's anything addition

> [sic] that had any bearing on his conduct, he had the opportunity to present that at his guilty hearing.

From this testimony it is difficult to conclude that strategy was employed in the decision to omit the transcript. Harris's appeal was based on a claim that required evidence that the two crimes occurred in a series of "closely related events." The trial transcript contained that evidence and was the only source of evidence to support the factual predicate of the claim Harris asserted on appeal. Failure to include the transcript under these circumstances falls below prevailing professional norms and therefore satisfies the first prong of Strickland.

B. *Prejudice*

On direct appeal Harris's only contention was that the trial court erred in sentencing him to a term longer than the presumptive thirty years for a Class A felony. Harris, 749 N.E.2d at 60. The Court of Appeals, after examining several cases in which the single episode question had been raised, concluded that "Harris's sentence arose from more than one episode of criminal conduct" and affirmed the trial court's decision to order the sentences to run consecutively. Id. at 61. In reaching this conclusion, the court stated:

> Here, our review is hampered by the fact that the evidence admitted at the trial prior to Harris' [sic] guilty pleas has not been included in the record presented to this court. On the basis of the record before us, neither of Harris's acts of sexual misconduct was a necessary prerequisite for the other. Indeed, although Harris had sexual intercourse with each of the girls on the same evening and in the same apartment, there was no other connection between the events such that a complete account of one cannot be given without referring to the details of the other.

Id. In affirming Harris's denial of post-conviction relief, the Court of Appeals reasoned that because on direct appeal the court said, "the acts of sexual intercourse involve separate victims and separate acts" and was therefore "more than one episode of criminal conduct," the court would have reached the same conclusion even if the trial transcript was part of the record. Id.; Harris, slip op. at 5. First, we do not believe that "separate victims and separate acts" is the test of distinct "episodes." The statutory definition of "episode of criminal conduct" is "offenses or a connected series of offenses that are closely connected in time, place, and circumstance." I.C. § 35-52-1-2(b). There is no requirement that the victims be the same, and the acts of two crimes are almost always distinct at least in one element.

6

A second formulation of the test of a single episode is also problematic.  In <u>Tedlock v. State</u>, 656 N.E.2d 273, 276 (Ind. Ct. App. 1995), the Court of Appeals stated that the "singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge.  <u>Id.</u> (quoting <u>State v. Ferraro</u>, 800 P.2d 623, 629 (Haw. App. 1990)).  In <u>Reed</u>, we noted that some Court of Appeals decisions after <u>Tedlock</u> and a decision from this Court had used this language in determining whether the offenses were a single episode.  We observed, however;

> [T]his is a bit of an overstatement.  We are of the view that although the ability to recount each charge without referring to the other can provide additional guidance on the question of whether a defendant's conduct constitutes an episode of criminal conduct, it is not a critical ingredient in resolving the question.  Rather, the statute speaks in less absolute terms: "a connected series of offenses that are closely connected in time, place, and circumstance."

<u>Reed</u>, 856 N.E.2d at 1200 (quoting I.C. § 35-50-1-2(b)).  The facts of <u>Tedlock</u> demonstrate that the language of that case is broader than necessary to evaluate the claim of a single "episode."  Tedlock pleaded guilty to four counts of securities fraud that arose out of four frauds committed against four different victims over a period of two years.  <u>Tedlock</u>, 656 N.E.2d at 276.  The court concluded that these crimes did not constitute a single episode of criminal conduct under the statute.  <u>Id.</u>  On its facts, therefore, it is plain that <u>Tedlock</u> involved a common criminal scheme, but it clearly involved multiple "episodes" that were not "closely connected in time and place."  We have also observed that <u>Tedlock</u> itself pointed to the wide span of time between the incidents and pointed to the "simultaneous" and "contemporaneous" character of the crimes that had been found to constitute a single episode of criminal conduct.  <u>Smith v. State</u>, 770 N.E.2d 290, 294 (Ind. 2002) (citing <u>Tedlock</u>, 656 N.E.2d at 276).

In Harris's case the testimony at trial prior to the guilty pleas revealed that Harris's crimes occurred after Harris and Common met the two victims together and took them both to the same apartment.  The crimes were committed in the same bed only a few minutes apart.  Two acts of sexual misconduct which occurred five minutes apart in the same bed and based on the same reason—the girls' need for a place to stay for the night—are "a connected series of offenses that are closely connected in time, place, and circumstance."  At the time of Harris's 2001 appeal, there were other published opinions from the Court of Appeals that also addressed the

"episode of criminal conduct" language under Indiana Code section 35-50-1-2(b).[3]  Both Trei v. State, 658 N.E.2d 131 (Ind. Ct. App. 1995) and Ballard v. State, 715 N.E.2d 1276 (Ind. Ct. App. 1999) involved more than one victim and longer time spans than the minutes it took Harris to commit his two offenses, yet each was held to constitute a single "episode."  There was, therefore, ample precedent supporting Harris's appeal.  The record provided to the Court of Appeals on direct appeal, however, did not permit it to reach this conclusion.

Harris's appellate counsel failed to include the transcript of the trial and instead relied in his brief on the prosecutor's recitation of the factual basis for the charge, which stated:

> More specifically, Your Honor, and very simply put, Mr. Harris and an individual named James Common met these two girls one night.  They ended up in the apartment of Robert Harris and at some point during the proceedings inside the apartment at various times, Mr. Harris had sexual intercourse with both [A] and [B].

The trial transcript showed that "Harris and his friend were able to get the girls consent to their sexual advances because the girls wanted a place to stay for the night."  Testimony from B showed that during this chain of events and "about five minutes" after Harris had sex with A, the foursome "switched" and Harris took B back to his room where the two had sex in the same bed which the four had just used.  This testimony, available only in the transcript, should have caused the Court of Appeals to hold that Harris's crimes were a single criminal episode.  The Court of Appeals observed that it was "hampered" by lack of the record and that its decision was made "on the basis of the record before" them.  There is a reasonable probability that the record would have caused either the Court of Appeals or this Court to rule that the record established a single

---

[3] See Ballard v. State, 715 N.E.2d 1276 (Ind. Ct. App. 1999) (finding a single episode where the defendant's battery "were against the two people that were present in the apartment he broke into and the crimes all occurred within approximately half an hour at the same location."); Jennings v. State, 687 N.E.2d 621 (Ind. Ct. App. 1997) (holding three round trips between two cities made to the same hardware store, the first two trips made to steal and the third trip made to commit arson to conceal the burglaries, was a single episode); Lockhart v. State, 671 N.E.2d 893 (Ind. Ct. App. 1996) (finding multiple episodes for four counts of child molesting that occurred against the same victim but on separate occasions over a three month period); Trei v. State, 658 N.E.2d 131 (Ind. Ct. App. 1995) (finding a single episode for one count of sexual misconduct with a minor and two counts of criminal confinement where offenses committed "during a short period of time at one location, were integral parts of one continuous criminal design and plan, [and] were motivated by the same criminal intent"); Reynolds v. State, 657 N.E.2d 438 (Ind. Ct. App. 1995) (holding three counts of burglary were multiple episodes where defendant burglarized three different homes in one day).

episode. In light of this record we so hold today. Accordingly, Harris's appellate counsel was ineffective.

## Conclusion

Transfer is granted and the judgment of the post-conviction court is reversed. Harris's sentence is revised to thirty years, which is the maximum permitted by Indiana statute at the time for these two crimes committed in the course of a single episode.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.