**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JONATHAN O. CHENOWETH**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FREDRICK D. GAITHER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1202-PC-106 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-9409-PC-118824

**July 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Fredrick Gaither appeals the denial of his successive petition for post-conviction relief. We affirm.

**Issue**

Gaither raises one issue, which we restate as whether the crimes he committed constituted a single episode of criminal conduct.

**Facts**

The relevant facts recited by the post-conviction court are:

> When Betty Jean Davis went to bed on September 15, 1994, her blue 1985 Buick Century was parked in front of her home. Sometime later that evening, her car was stolen. At 8:30 p.m. on that same day, Suzanne Yoder left work and went to dinner with friends. When Yoder arrived home later that night, she put her car in the garage and walked toward her house. As she began to unlock her back door, someone came up the steps behind her, put a gun in her face, and said, "Be quiet or I'll kill you." (R. at 347.) The man took her purse and her rings and then rubbed her chest. Yoder asked him not to touch her, and he said, "I'm not trying to feel you, I'm looking for something." (Id.) Finding nothing else, the man ran away. Yoder entered her house, woke her husband, and called the police to report the robbery.

> A few hours later, at 3:30 a.m. on September 16, Alicia Segraves arrived home from work and parked her car on the street across from her house. As she was getting out of her car, a blue or gray four door Buick Century was driving past her. The car stopped, a man got out, put a gun in her face, and told her to lie down on the ground. The man began going through her shirt to check for necklaces, checking her fingers for rings, and feeling her pockets, taking whatever he found. When her wallet did not have any money in it, he threatened to kill her and asked where her money was. Segraves told him her money was in the house. The man placed the gun in Segraves back and walked her to the porch.

2

When Gaither became distracted, Segraves slipped into the house, locked the door, and ran upstairs to call the police.

One hour later, Wilma and Ceolia [G]raves pulled into a driveway and Wilma got out of the car. A blue Buick Century pulled up behind them. As Wilma walked around the back of Ceolia's car, a man said something to her that she did not understand. When she asked what he said, he knocked her down, pulled out a gun, and stood over her telling her he was going to kill her. Ceolia told Wilma to give the man her purse. Once the man got her purse, he jumped back into the car and drove away. Ceolia tried to follow him, while Wilma called the police.

Fifteen minutes after Wilma was robbed, Indianapolis Police Officer Ronald Hicks, who was on routine patrol and had heard reports of armed robberies involving a blue or gray Buick Century, saw a Buick Century and began following it. The driver sped up and turned the wrong way down a one-way street. Officer Hicks turned on his emergency lights and pursued the Buick. After a high-speed chase, the driver abandoned the car and began running. Officer Hicks was able to apprehend the man, who was Gaither. Either in the car or on Gaither, the police found an unlicensed handgun, a screwdriver used to start the stolen car, and the victims' property, including the rings stolen from Yoder. The police brought Segraves, Wilma, and Ceolia to the scene, and each identified Gaither as the robber. Davis was brought to the scene and identified her Buick.

The State charged Gaither with three counts of robbery as a class B felony, one count of auto theft as a class D felony, one count of carrying a handgun without a license as a Class A misdemeanor, and one count of resisting law enforcement as a Class A misdemeanor. A jury found Gaither guilty of all charges . . . .

App. pp. 136-137 (quoting Gaither v. State, No. 49A04-0206-PC-282, slip op. at 2-4

(Ind. Ct. App. Feb. 11, 2003) (footnotes omitted)). Gaither was sentenced to twenty

years for each robbery conviction, three years for the auto theft conviction, one year for

3

the resisting law enforcement conviction, and one year for the handgun conviction. The trial court ordered all of the sentences except one of the robbery convictions to be served consecutively for a total sentence of forty-five years.

Gaither appealed his convictions and we affirmed in Gaither v. State, No. 49A02-9606-CR-393 (Ind. Ct. App. April 17, 1997), aff'd on reh'g. Gaither filed a petition for post-conviction relief challenging his convictions, and this petition was denied. In 2003, we affirmed the denial of post-conviction relief in Gaither, No. 49A04-0206-PC-282. After the 2003 decision affirming the denial of post-conviction relief, Gaither filed six successive petitions for post-conviction relief, which were denied, and at least two appeals have been dismissed.

However, on October 29, 2010, we allowed Gaither to file a successive petition for post-conviction relief based on his assertion that, because his conduct was a single episode of criminal conduct, he was being unlawfully restrained. On January 18, 2012, following a hearing, the post-conviction court denied Gaither's petition, concluding in part:

> It is apparent from a reading of the relevant cases that Defendant's case does not fall within any reasonable concept of a "single episode of criminal conduct." Certainly Defendant's various crimes can be related without reference to each other, and each of the crimes occurred separately and distinctly: Defendant first stole a car, then some hours later robbed his first victim, fled this crime scene, traveled to another location and subsequently committed another robbery.
> Moreover, there is no caselaw for Defendant's position. In all cases involving separate victims, the offenses have not fallen within the single episode rule unless they happened simultaneously or in the same location. . . .

4

> Although Defendant's crimes were committed within a span of hours and involved the same get-away vehicle, they occurred in different locations against different victims. As such Defendant's crimes were not part of a single episode of criminal conduct and Defendant has failed to meet his burden of proof.

App. p. 140. Gaither now appeals.

## Analysis

Gaither argues that the post-conviction court erroneously denied his petition because his offenses were a single episode of criminal conduct, requiring the reduction of his forty-five-year sentence to twenty-five years. Generally, the completion of the direct appeal process closes the door to a criminal defendant's claims of error in conviction or sentencing. Pruitt v. State, 903 N.E.2d 899, 905 (Ind. 2009). However, defendants whose appeals have been rejected are allowed to raise a narrow set of claims through a petition for post-conviction relief. Id. (citing Ind. Post-Conviction Rule 1(1)). "The scope of the relief available is limited to 'issues that were not known at the time of the original trial or that were not available on direct appeal.'" Id. (citation omitted). "Issues available but not raised on direct appeal are waived, while issues litigated adversely to the defendant are res judicata." Id.

A post-conviction court must make findings of fact and conclusions of law on all issues presented in the petition. Id. (citing P-C.R. 1(6)). The findings must be supported by the facts, and the conclusions must be supported by the law. Id. "Our review on appeal is limited to these findings and conclusions." Id.

5

The petitioner bears the burden of proof, and an unsuccessful petitioner appeals from a negative judgment. Id. A petitioner appealing from a negative judgment must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. Id. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion and the post-conviction court has reached the opposite conclusion. Id.

As an initial matter, the State asserts that Gaither waived this challenge by not raising it in his direct appeal or in his first petition for post-conviction relief. Gaither responds by arguing that the State waived its waiver argument by raising it for the first time on appeal. Gaither also argues his claim has not been forfeited by procedural default because he may challenge an illegal sentence at any time. We need not resolve this question, however, because, even if Gaither's claim is properly before us, it is unsuccessful on the merits.

According to Gaither, consecutive sentences are not appropriate because his 1994 crimes were a single episode of criminal conduct limiting his sentence to the presumptive sentence for the next highest class of felony—a Class A felony. The parties agree that the law in effect at the time Gaither committed the crimes controls. The relevant portion of the statute, as amended in 1994, provided:

> The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for murder and felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury if the

6

> defendant knowingly or intentionally caused the serious bodily injury, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Ind. Code 35-50-1-2(a) (1994). The parties also agree that at the time Gaither committed the offenses the presumptive sentence for the next highest class of felony, a Class A felony, was twenty-five years. See I.C. § 35-50-2-4 (1994). The parties also appear to agree that the July 1, 1995 amendment defining "episode of criminal conduct" as "offenses or a connected series of offenses that are closely related in time, place, and circumstance" is applicable. I.C. § 35-50-1-2(b) (1995).

The parties dispute whether Gaither's conduct was a single episode of criminal conduct. Relying on Reed v. State, 856 N.E.2d 1189, 1200 (Ind. 2006) and Harris v. State, 861 N.E.2d 1182, 1188 (Ind. 2007), Gaither asserts that our analysis should not be based on whether a complete account of one charge can be related without referring to details of the other charge. In Reed, our supreme court observed that this formulation "is a bit of an overstatement." Reed, 856 N.E.2d at 1200. The Reed court explained:

> We are of the view that although the ability to recount each charge without referring to the other can provide additional guidance on the question of whether a defendant's conduct constitutes an episode of criminal conduct, it is not a critical ingredient in resolving the question. Rather, the statute speaks in less absolute terms: "a connected series of offenses that are closely connected in time, place, and circumstance."

7

Id. (quoting I.C. § 35-50-1-2(b)).  Citing Reed, the Harris court referred to this formulation as "problematic" and "broader than necessary" to evaluate a single episode of criminal conduct claim.  Harris, 861 N.E.2d at 1188.  Based on these cases, we believe that the ability to recount each charge separately can, in certain circumstances, be helpful in determining whether a series of offenses are closely connected in time, place and circumstance but is not dispositive in determining whether a series of offenses is a single episode of criminal conduct.

Gaither asserts that he committed the offenses in less than eight hours, that he traveled less than one and a quarter miles between each of the robberies, that he used the stolen car in the commission of the other offenses, that in all three robberies he displayed a handgun and threatened to kill the victim, and that he felt the victims for jewelry instead of asking them for it.  Accordingly, Gaither argues that the offenses were closely related in time, place, and circumstance and, therefore, constitute a single episode of criminal conduct.

We disagree.  Gaither stole Davis's car from her house, he later robbed Yoder at her house, then he robbed Segraves at her house, and after that he robbed Graves at her house.  Although the three robberies were committed in a similar manner, they occurred over the course of a night, in different locations, and against separate victims.  We are not convinced that Gaither's use of the stolen car to drive to different locations in and of itself linked the crimes so as to make them a single episode of criminal conduct.  To the contrary, it further demonstrates the distinct time, location, and victim associated with each offense.

8

Accordingly, the facts of this case are distinguishable from the cases upon which Gaither relies. Cf Henson v. State, 881 N.E.2d 36, 39 (Ind. Ct. App. 2008) (holding that the burglary of two neighboring garages on the same morning was a single episode of criminal conduct), trans. denied; Fields v. State, 825 N.E.2d 841, 846 (Ind. Ct. App. 2005) (holding that the conspiracy to commit burglary and the attempted robbery that took place as the conspiracy was carried out amounted to a single episode of criminal conduct), trans. denied; Jennings v. State, 687 N.E.2d 621, 623 (Ind. Ct. App. 1997) (holding that the burglary and theft of a hardware store and a subsequent burglary and arson of the same store on the same night with intent of concealing the first break-in was a single episode of criminal conduct). Instead, this case is more like Smith v. State, 770 N.E.2d 290, 294 (Ind. 2002), in which Smith stole a checkbook and proceeded to deposit six checks at six different banks in Marion County over the course of an afternoon. Although the Smith court acknowledged that each forgery could be recounted without referencing the others, the court also observed that each forgery occurred at a separate time, separate place, and for a separate amount of money and was satisfied that the Smith's conduct did not constitute a single episode of criminal conduct. Smith, 770 N.E.2d at 294.

As in Smith, Gaither's crimes were separate in time, separate in place, and against separate victims. They did not constitute a single episode of criminal conduct. Gaither has not established that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court.

9

## Conclusion

Gaither has not established that the post-conviction court erroneously denied his successive petition for post-conviction relief. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.