**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Feb 14 2014, 6:16 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANDREW WALLACE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1306-CR-304 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Helen Marchal, Judge
Cause No. 49G16-1302-FD-11531

**February 14, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Andrew Wallace appeals his convictions and sentence for Class D felony domestic battery and two counts of Class D felony battery on a child with injury and his status as an habitual offender. We affirm in part, reverse in part, and remand.

**Issues**

Wallace raises two issues, which we restate as:

    I.      whether fundamental error occurred as a result of the deputy prosecutor's statements during closing arguments; and

    II.    whether Wallace's sentence violated the provisions of Indiana Code Section 35-50-1-2(c).

**Facts**

Wallace was married to C.T., and they had three children, five-year-old G.W., four-year-old A.W., and one-year-old An.W. C.T. also had a child from a previous relationship, eight-year-old T.P. On February 18, 2013, Wallace and C.T. were arguing about money. At approximately 3:00 p.m., Wallace took G.W., left the apartment, and went to his uncle's house. When Wallace returned with G.W. at 7:00 p.m., he was intoxicated. Wallace began looking for his "weed" and asking C.T. about it. Tr. p. 31. Wallace then said that G.W. took it and started walking toward the children's bedroom. C.T. tried to follow him, but Wallace pushed her down onto the sofa and "smacked [her] with an open hand." Id. at 32. Wallace then went into the children's bedroom and yelled at G.W. C.T. tried to pull him away from the children, but Wallace pushed her to the floor. Wallace got on top of G.W., punched her in the stomach, and choked her, resulting

2

in a long scratch on her neck and shoulder. While T.P. was trying to protect G.W. from Wallace, Wallace hit T.P. with a closed fist on her jaw. C.T. took An.W., went into the bathroom, and called 911. Wallace then entered the bathroom and punched C.T. on the side of her head with a closed fist. The police arrived shortly thereafter and arrested Wallace.

The State charged Wallace with Class D felony domestic battery, Class D felony battery on a family or household member, two counts of Class D felony battery on a child with injury, Class A misdemeanor domestic battery, and Class A misdemeanor battery. The State also alleged that Wallace was an habitual offender. A jury found Wallace guilty as charged, and Wallace pled guilty to being an habitual offender. Due to double jeopardy concerns, the trial court entered judgment of conviction on Class D felony domestic battery and two counts of Class D felony battery on a child with injury. The trial court sentenced Wallace to consecutive sentences of three years on each of the convictions enhanced by two years for Wallace's status as an habitual offender. Wallace now appeals.

**Analysis**

*I. Prosecutorial Misconduct*

Wallace argues that the deputy prosecutor committed misconduct during his closing argument. "We evaluate a properly preserved claim of prosecutorial misconduct using a two-step analysis." Castillo v. State, 974 N.E.2d 458, 468 (Ind. 2012). "We first determine whether misconduct occurred, then, if there was misconduct, we assess 'whether the misconduct, under all of the circumstances, placed the defendant in a

3

position of grave peril to which he or she would not have been subjected' otherwise." Id. (quoting Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006)).  To preserve a claim of prosecutorial misconduct, the defendant must ask the trial court, at the time the misconduct occurs, to admonish the jury or move for a mistrial if admonishment is inadequate. Id.

Here, Wallace neither asked for an admonishment nor for a mistrial.  Failure to request an admonishment or a mistrial waives the claim, unless the defendant can demonstrate that the misconduct rises to the level of fundamental error. Id.  Fundamental error is a narrow exception to the waiver rule intended to place a heavy burden on the defendant. Id.  "It requires the defendant to establish that the misconduct '[made] a fair trial impossible or constitute[d] clearly blatant violations of basic and elementary principles of due process' or that the misconduct 'present[ed] an undeniable and substantial potential for harm.'" Id. (quoting Benson v. State, 762 N.E.2d 748, 756 (Ind. 2002)).

During closing arguments, the deputy prosecutor stated:

> Andrew Wallace's defense is hinged on everyone is lying. You heard him up here; I was asleep . . . I went to sleep. That's it.  According to the C.A.D. which has been entered into evidence five minutes elapsed between the time that the dispatchers made (unintelligible) from the 911 call to when the officers arrived.  It's back[ed] up by Officer Griffith's testimony.  The stories are consistent.  There wasn't enough time to be coached.  There wasn't enough time to tell them what was going on.  We know what happened because that is the truth.  What we heard was the truth and furthermore finally that the children were screaming when they entered the house.  They had to be consoled by their grandmother.

4

All of that is consistent with what we heard from the State's evidence and directly contradicts what Mr. Wallace said.

*  *  *  *  *

You have heard consistency. You have heard truth today. What Mr. Wallace has said is unreasonable. It doesn't jive with anything . . . anything that you have heard today. It does not comport with.

Tr. pp. 107, 110.

According to Wallace, the deputy prosecutor's comments amounted to improper vouching for the witnesses when he said that the witnesses told the truth. Our supreme court addressed a similar issue in Cooper, where it held:

> [A] prosecutor does not necessarily engage in misconduct by characterizing a defendant as a liar. In Hobson v. State, the "prosecutor gave personal opinions as to the truthfulness of witnesses" when the prosecutor stated to the jury during closing arguments, "I warned you that [the defendants] are liars." 675 N.E.2d 1090, 1095 (Ind. 1996). This Court noted that where evidence introduced at trial indicates that either the defendant was lying or that other witnesses were lying, comments by the prosecutor which merely "pointed out the incongruities in the testimony presented at trial, concluded that someone must not be testifying truthfully, and invited the jury to determine which witness was telling the truth" did not constitute misconduct. Id. at 1096. Rather, "a prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence." Lopez v. State, 527 N.E.2d 1119, 1127 (Ind. 1988).

Cooper, 854 N.E.2d at 836 (alteration in original). The deputy prosecutor here merely pointed out that Wallace's explanation was inconsistent with the other witnesses' testimony and the evidence. The comments were not prosecutorial misconduct, and Wallace's fundamental error argument fails. See, e.g., Surber v. State, 884 N.E.2d 856,

5

866 (Ind. Ct. App. 2008) (finding no misconduct where the prosecutor's comments "as a whole encouraged the jury to find that C.S. was telling the truth while Surber was lying"), trans. denied.

## II.  Sentencing

Next, Wallace argues that he was improperly sentenced.  Indiana Code Section 35-50-1-2(c) provides:

> [E]xcept for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Wallace contends that his offenses were not "crimes of violence" and that his offenses arose "out of an episode of criminal conduct."  Ind. Code § 35-50-1-2(c).  According to Wallace, the maximum possible sentence here, not including the habitual offender enhancement, was four years, and he was improperly sentenced to nine years.

The trial court addressed this issue at the sentencing hearing and stated:

> [W]hile I am acknowledging under 35-50-1-2 that there is a statutory cap on the next higher level felony . . . if there is a single episode of criminal conduct I do believe that given the fact that we have three separate victims and while these batteries occurred one after the other in succession . . . I do believe that there is support for a finding that all three of these counts be run consecutively for a total of nine years. The evidence as I recall was that victim [C.T.] was first battered in the living room.  You then moved on into a bedroom and struck [G.W.] before moving on and battering [T.P.].

6

Tr. pp. 151-52.

On appeal, the State concedes that Wallace's offenses are not "crimes of violence" as defined by Indiana Code Section 35-50-1-2(a). Thus, the issue is whether Wallace's offenses amounted to an "episode of criminal conduct," which Indiana Code Section 35-50-1-2(b) defines as "offenses or a connected series of offenses that are closely related in time, place, and circumstance."

Our supreme court addressed the "episode of criminal conduct" language in Reed v. State, 856 N.E.2d 1189, 1201 (Ind. 2006), and Harris v. State, 861 N.E.2d 1182 (Ind. 2007). In Reed, the defendant was being pursued by police officers when he stopped his car, opened the door, and fired a gunshot in the direction of the officers. He then began driving away, but a few seconds later he slowed down and fired two additional shots in the direction of one of the officers. Our supreme court held that, although the offenses were "not precisely 'simultaneous' or 'contemporaneous,' . . . the two offenses were nonetheless 'closely connected in time, place, and circumstance.'" Reed, 856 N.E.2d at 1201. Consequently, the offenses were a single episode of criminal conduct within the meaning of Indiana Code Section 35-50-1-2(c).

Similarly, in Harris, the defendant committed acts of sexual misconduct with a minor against two girls on the same bed five minutes apart. The court also noted that the acts were "based on the same reason—the girls' need for a place to stay for the night." Harris, 861 N.E.2d at 1189. The court concluded that the defendant's offenses were "a connected series of offenses that are closely connected in time, place, and circumstance." Id.

7

Here, Wallace's offenses against C.T., G.W., and T.P. occurred within minutes, if not seconds, of each other. The acts were all based on the same reason—Wallace's hunt for his missing marijuana. Although the batteries of C.T. occurred in the living room, bedroom, and bathroom, all of the batteries occurred in the same two-bedroom apartment. We conclude that the offenses were closely connected in time, place, and circumstance. See, e.g., Ballard v. State, 715 N.E.2d 1276, 1280-81 (Ind. Ct. App. 1999) (holding that a residential entry and two batteries were a single episode of criminal conduct). Consequently, the total of the consecutive terms of imprisonment, exclusive of habitual offender enhancement, to which Wallace could be sentenced could not exceed the advisory sentence for a Class C felony, which is four years. The trial court erred by imposing a nine-year sentence.[1]

**Conclusion**

Wallace has not established that the deputy prosecutor committed misconduct, much less that fundamental error occurred, as a result of the closing arguments. However, the sentence imposed violates Indiana Code Section 35-50-1-2(c). We reverse the sentence and remand for resentencing consistent with this opinion. We affirm in part, reverse in part, and remand for resentencing.

Affirmed in part, reversed in part, and remanded.

ROBB, J., and BROWN, J., concur.

---

[1] The State argues that, on remand, the trial court should be allowed to increase the habitual offender enhancement if the trial court desires to do so. We agree. Our courts have held that, on resentencing, the trial court has "flexibility upon remand, including the ability to increase sentences for individual convictions without giving rise to a presumption of vindictive sentencing, so long as the aggregate sentence is no longer than originally imposed." Sanjari v. State, 981 N.E.2d 578, 583 (Ind. Ct. App. 2013), trans. denied.