# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 26 2017, 10:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

## I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Danielle E. Woolley,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 26, 2017<br><br>Court of Appeals Case No.<br>83A04-1608-CR-1765<br><br>Appeal from the Vermillion Circuit Court<br><br>The Honorable Bruce V. Stengel, Judge<br><br>Trial Court Cause No.<br>83C01-1510-F3-8 |

**Barnes, Judge.**

# Case Summary

[1] Danielle Woolley appeals her sixty-four-year sentence for four counts of Level 3 felony neglect of a dependent. We affirm.

# Issues

[2] Woolley raises two issues, which we restate as:

    I.     whether her four consecutive sentences were limited to twenty years because her crimes constituted a single episode of criminal conduct; and

    II.    whether her sixty-four-year sentence was inappropriate.

# Facts

[3] Woolley and her husband, John Woolley, have four children, J.W., C.W., S.W., and A.W. At the time this case commenced, the children were eight, five, four, and two years old, respectively. The Woolleys lived with John's parents. In October 2015, the Vermillion County Office of the Department of Child Services ("DCS") investigated a report involving the Woolley children. Two DCS workers and a police officer discovered the children locked in squalid bedrooms on the second floor of the Woolleys' house.

[4] J.W., the oldest child, was locked alone in his room. At the time the DCS workers and police officer first observed J.W., he was naked. His hands and feet were covered in feces, and fecal matter was caked under his fingernails. He did not speak, and he sucked on his hands. The windows in J.W.'s room were boarded up, and there was no air conditioning in his room. The floor, walls,

and ceiling of J.W.'s bedroom were smeared or spattered with fecal matter. The floor of J.W.'s room was completely covered in fecal matter that had been worn smooth by people walking on it. Instead of a proper bed, J.W.'s room contained a wooden frame, but no mattress. J.W. covered himself with a pile of rags or blankets, which were also covered in feces. J.W.'s room also contained a cup, bowl, and paper plates, all of which were crusted with fecal matter.

[5] C.W. was also naked, filthy, and locked alone in a room. C.W. screamed and did not want to be touched when Woolley picked her up to dress her. The guardian ad litem assigned to the Woolley children testified that C.W. "looked like some of the children that you see on the commercials on television of children that are starving. She was hollow." July 21, 2016, Tr. p. 38. S.W. and A.W., the youngest children, lived in cribs in the Woolleys' master bedroom. They, too, were soiled with feces.

[6] All four of the children had lice and/or fleas. All of the children were non-verbal, and none appeared to recognize their names. None of the children were toilet trained. J.W. was the only child who could eat solid food; the others did not know how to chew or swallow solids and ate only baby food. The children did not appear to recognize each other. Following their removal, all four children were admitted to Riley Hospital for Children in Indianapolis for treatment.

[7] The following is merely an overview of the children's diagnoses and challenges. All of the children were diagnosed with developmental delays or significant developmental delays. Eight-year-old J.W., for example, was found to be at a young toddler's age developmentally. All of the children were also diagnosed with lack of medical care and feeding dysfunction or problems. C.W., S.W., and A.W. were diagnosed with failure to thrive and/or signs of malnutrition. C.W. and A.W. were diagnosed with abnormal or poor dentation. The children's guardian ad litem stated in her victim impact statement that, "The impact of the crimes and abuse of these parents is impossible to put into words." Confidential App. Vol. III, p. 38.

[8] The police officers who searched the Woolleys' home after the children were removed described the condition of the home in their affidavits for probable cause. One stated that the odor inside the residence "took his breath away." *Id.* at 16. Another stated, "The smell was so over whelming [sic] that you could not stay very long in the home before your eyes and nose began to burn and made you sick." *Id.* Another described needing to wear a respirator inside the house. Shortly after the children were removed, the house was condemned.

[9] The State charged Woolley with four counts of Level 3 felony neglect of a dependent resulting in serious bodily injury. On March 22, 2016, without the benefit of a plea agreement, she pled guilty to the four Level 3 felonies with which she was charged. On July 21, 2016, the trial court sentenced Woolley to sixteen years for each conviction and ordered her to serve her sentences

consecutively. Woolley's aggregate sentence is sixty-four years. Woolley now appeals.

# Analysis

## I.     *Single Episode of Criminal Conduct*

Woolley first contends that her four convictions represent a single episode of criminal conduct and that, as such, her aggregate sentence was limited to twenty years.

> In general, a trial court cannot order consecutive sentences in the absence of express statutory authority. A sentence that is contrary to or violative of a penalty mandated by statute is illegal in the sense that it is without statutory authorization. An appellate claim of sentencing error is subject to review for abuse of trial court discretion; reversal results only if there has been a manifest abuse of discretion.

*Slone v. State*, 11 N.E.3d 969, 972 (Ind. Ct. App. 2014) (quotations omitted) (citations omitted).

Indiana Code Section 35-50-1-2 provides that, except for crimes of violence, the aggregate of one's consecutive terms of imprisonment for multiple felony convictions arising out of an episode of criminal conduct shall not exceed the sentences set out by Indiana Code Section 35-50-1-2(d).[1] "Episode of criminal

---

[1] Indiana Code Section 35-50-1-2(d)(4) provides, "If the most serious crime for which the defendant is sentenced is a Level 3 felony, the total of the consecutive terms of imprisonment may not exceed twenty (20) years."

conduct" means "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b). Woolley was convicted of Level 3 felonies and contends her aggregate sentence may not exceed twenty years.

[12]     In determining whether multiple offenses constitute an episode of criminal conduct, the focus is on the timing of the offenses and the simultaneous and contemporaneous nature, if any, of the crimes. Additional guidance on the question can be obtained by considering whether the alleged conduct was so closely related in time, place, and circumstance that a complete account of one charge cannot be related without referring to the details of the other charge. Whether certain offenses constitute a single episode of criminal conduct is a fact-intensive inquiry to be determined by the trial court.

*Slone*, 11 N.E.3d at 972 (citations omitted) (quotations omitted).

[13] With regard to ordering consecutive sentences, the trial court stated:

The Court feels that this situation is not an episode of criminal conduct. The charging information for all four counts says, "Prior to and including October 21, 2015—" so it's just not the date of October 21, 2015, but it's prior to. And I will look at this a little bit more as I talk about this, but the information contained in the probable cause affidavit from Mrs. Woolley and her husband was that they had been living at the address at 604 Vine Street for the prior three years, approximately three years or more, and there is evidence that this conduct occurred daily for years. That it's not a single event. That it's not closely related in time at all. It involves four individuals . . . So I think this is a series of conduct that happened over a long, long period of time and so the episode of criminal conduct does not apply in this situation.

July 21, 2016, Tr., pp. 69-70.

[14] We agree that the lengthy period of time over which Woolley neglected the children is critical to deciding this issue. We also conclude that the number of victims, while not dispositive, is helpful here in addressing this issue. We acknowledge that the nature of the neglect of each child was similar. However, the simple fact that all four children were neglected necessarily means that Woolley made the decision to neglect each of them individually. More importantly, Woolley's abuse of the children was not a spree resulting in a connected series of offenses closely connected in time, place, and circumstance as required by Indiana Code Section 35-50-1-2(b). *Cf. Harris v. State*, 861 N.E.2d 1182 (Ind. 2007) (Holding that convictions for sexual misconduct with a minor constituted one episode of criminal conduct because the acts, involving two victims, took place in the same bed, five minutes apart, and for the same reason—that the girls must have intercourse in order to stay the night with the defendant.) Instead, the neglect here was sustained over several years. Woolley's earliest acts of neglect—which may well have taken place before some of the children were born—simply are not closely connected in time or circumstance to those that took place years later and do not constitute a single episode of criminal conduct.

[15] The parties seem to disagree regarding the significance of the idea that crimes constitute an episode of criminal conduct when they are so closely connected in time, place, and circumstance that *a complete account of each offense cannot be related without referring to the details of another*. *See Tedlock v. State*, 656 N.E.2d

273, 276 (Ind. Ct. App. 1995). We note that our supreme court has referred to this test as,

> a bit of an overstatement. We are of the view that although the ability to recount each charge without referring to the other can provide additional guidance on the question of whether a defendant's conduct constitutes an episode of criminal conduct, it is not a critical ingredient in resolving the question. Rather, the statute speaks in less absolute terms . . . .

*Harris v. State*, 861 N.E.2d at 1188 (citing *Reed v. State*, 856 N.E.2d 1189, 1200 (Ind. 2006). We therefore do not apply that test in this case.

[16] The extended period of time over which Woolley neglected her children, and the fact that four different children were victims is sufficient to support our conclusion that her crimes were not an episode of criminal conduct. The trial court did not abuse its discretion by ordering Woolley to serve her four sentences consecutively for an aggregate sentence of sixty-four years.

## II.    *Inappropriate Sentence*

[17] Woolley argues that her sixty-four-year sentence is inappropriate under Indiana Appellate Rule 7(B). Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct.

App. 2007). Still, we must give due consideration to that decision. *Id.* We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[18] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[19] We acknowledge that Woolley's character is notable in that she has no criminal history and that she plead guilty in this matter without the benefit of a plea agreement. The nature of her offenses however, reflects poorly on her character and more than justifies the lengthy sentence she received.

[20] In its sentencing statement, the trial court described the pictures of the children as "hard to describe" and "horrific," and stated, "[t]his brutal callous lifelong

torture of her children was so heinous and horrific in nature to be beyond description or complete understanding." July 21, 2016, Tr. pp. 74-75. We agree with that assessment. The conditions in which Woolley kept the children were so deplorable and unsanitary that the police officers and others who entered the house felt physically ill and required respirators to complete their work. The children were so neglected that they suffered physically, emotionally, cognitively, medically, and socially. J.W., for example, has been placed in a residential program, and, according to his medical records, may require life-long care in an assisted living facility. While the children suffered inside the house, Woolley, the trial court noted, was frequently observed by neighbors "in the back yard with her husband lounging around a pool . . . ." *Id.* at 75. Woolley's neighbor stated she was unaware that any children lived in Woolley's house. The nature of these offenses is nothing short of heinous. Woolley's sixty-four-year sentence is not inappropriate.

## Conclusion

[21]  Woolley's crimes did not constitute an episode of criminal conduct, and the trial court did not abuse its discretion by ordering her to serve an aggregate sentence of sixty-four years. The sixty-four-year sentence is not inappropriate. We affirm.

Affirmed.

Kirsch, J., and Robb, J., concur.