## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 09 2015, 6:31 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stanley F. Wruble III
Matthew J. Anderson
Wruble & Associates
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James K. Chenoweth, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent* | June 9, 2015 <br><br> Court of Appeals Case No. 20A04-1410-PC-465 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Terry C. Shewmaker, Judge <br><br> Trial Court Cause No. 20C01-1308-PC-51 |

**Mathias, Judge.**

[1] James K. Chenoweth ("Chenoweth") appeals the Elkhart Circuit Court's denial of his petition for post-conviction relief.

[2] We affirm.

<h1 style="text-align:center">Facts and Procedural History</h1>

In 2009, Chenoweth was convicted of two counts of Class A felony child molesting and ordered to serve an aggregate forty-year sentence in the Department of Correction. Chenoweth appealed his convictions, and facts relevant to the post-conviction proceedings were discussed in his direct appeal:

> In 2006, A.S., the victim's mother, dated Chenoweth for approximately three months. During this time, A.S., who suffered from a multitude of mental disorders, routinely allowed Chenoweth to care for the four-year-old victim. J.S., A.S.'s mother, also routinely cared for the victim. Because of her mental disorders, A.S. was considered by J.S. to be developmentally between twelve and fourteen years old.

> After A.S. and Chenoweth broke up, they remained friends, and Chenoweth often cared for the victim. A.S. married E.S., and the couple allowed the forty-year-old Chenoweth to move in with them and care for the victim. Indeed, while A.S. was hospitalized for approximately three weeks of mental treatment, Chenoweth spent a considerable amount of time with the victim.

> During this time, J.S. observed the victim simulating oral sex with her dolls. When A.S. was released from the hospital, J.S. informed her of the victim's behavior. A.S. was indifferent and told J.S. to mind her own business.

> In January or February of 2007, J.S. again observed the victim simulating sexual behavior with the dolls by placing an unclothed male doll on its back and straddling him with an unclothed female doll. J.S. informed A.S. and E.S. of the behavior, but no action was taken.

> From March 9-11, 2007, Chenoweth was permitted to watch the victim for three consecutive days at his own residence. On March 13, 2007, Chenoweth again watched the victim, and after Chenoweth had left for the evening, the victim told E.S. that she had pain in her "hoo-hoo," the term she used for her vagina. E.S.

and A.S. inspected the victim and noticed that both the exterior and interior of the victim's vagina were red and cracking "like dried dirt."

On March 17, 2007, Chenoweth watched the victim while E.S. and A.S. went out for St. Patrick's Day. While at a bar, they discussed the victim's condition with friends, who urged them to take further action. Consequently, E.S. and A.S. left the bar and called the police.

On March 23, 2007, Gayla Konanz, a forensic interviewer with the Child and Advocacy Center ("CAC") conducted a forensic interview of the victim. During the interview, the victim indicated that Chenoweth had touched her vagina with his finger, had placed his finger inside her vagina, had inserted his penis in her vagina, and had ejaculated after placing his penis in the victim's mouth. The victim also said that Chenoweth had touched her "butt" and that it had hurt. The victim said that Chenoweth had told her not to tell anyone and to keep a secret about his penis or he would go "bye-bye ."

*Chenoweth v. State*, No. 20A03-0912-CR-566, 930 N.E.2d 1244 (Ind. Ct. App. Aug. 3, 2010), *trans. denied* (record citation omitted).

[4] Chenoweth appealed his convictions and raised three issues: 1) whether the trial court abused its discretion when it admitted the victim's videotaped forensic interview because "there [was] no sufficient indication of the time frame between the alleged acts of molestation and the date the videotape was made;" 2) whether Chenoweth's trial counsel was ineffective for failing to enter into evidence the transcript of the Protected Person's Statute hearing because the transcript would have shown that the "victim testified that all [Chenoweth] did was touch the outside of her vagina with his finger;" and 3) whether the trial court abused its discretion when it sentenced Chenoweth and whether his forty-

year aggregate sentence was inappropriate in light of the nature of the offense and the character of the offender. *Id.* Our court rejected Chenoweth's arguments and affirmed his convictions and sentence.

[5] On October 5, 2013, Chenoweth filed a petition for post-conviction relief and alleged, in part, that his appellate counsel was ineffective. Specifically, Chenoweth alleged that appellate counsel should have 1) argued that admission of the victim's videotaped statement violated his Sixth Amendment right to confrontation; and 2) argued that his trial counsel was ineffective for failing to argue that the victim was not unavailable to testify at trial.

[6] A hearing was held on Chenoweth's petition for post-conviction relief on March 13, 2014. Only Chenoweth and his mother testified at the hearing.

[7] On August 1, 2014, the post-conviction court issued findings of fact and conclusions of law denying Chenoweth's requested relief. In pertinent part, the court found:

> 19. In the instant case, Petitioner's first claim is that the trial court committed fundamental error in admitting the child victim's recorded forensic interview over Petitioner's Confrontation Clause objection after finding that the victim was unavailable for medical reasons when the court determined that she would suffer emotional trauma if forced to testify in front of Petitioner at trial despite her ability to do so at the protected persons hearing without losing her ability to reasonably communicate. The Indiana Court of Appeals specifically discussed the foundational requirement provisions of the Protected Persons Statute, and held that the trial court 'found that the time, content and circumstances of the videotaped

interview provided sufficient indications of reliability," and that there was no error with its admission. To the extent that Petitioner invites the court to reconsider this matter as a freestanding claim of fundamental error, said claim is *res judicata* and not available as grounds for Post Conviction Relief.

20. Petitioner, however, attempts to raise the aforementioned issue under the umbrella of an ineffective assistance of trial counsel claim. As noted in paragraph 4 herein above, Petitioner already raised the issue of whether his trial counsel was ineffective for not introducing a transcript of the subject video recording at trial and on direct appeal. In the current post conviction proceedings, Petitioner now alleges his counsel was ineffective for failing to object to the trial court's determination that the child victim was not available to testify at trial, and challenging the admission of the video on that basis.

21. Petitioner can not raise a new theory of ineffective assistance of counsel in post conviction proceedings. . . .

22. In the instant case, because Petitioner argued ineffective assistance of counsel on appeal, and the Indiana Court of Appeals decided against him on the merits, *res judicata* prohibits Petitioner from arguing new grounds for ineffective assistance in post conviction relief.

23. Even if Petitioner's argument was considered on the merits, the record does not support Petitioner's claim that counsel was ineffective for failing to object to the trial court's determination that the child victim was no available to testify at trial. Mari Duerring ("Duerring") represented Petitioner through the pendency of this Cause, including during the deposition of the child victim, the pre-trial Protected Person's Hearing, and the jury trial. During the Protected Person's hearing, the State presented evidence that the victim, a minor child, was suffering from a medical condition. Specifically, Dr. Allen J. Stuckey, M.D., a board certified physician in both pediatrics and psychiatry, testified that he believed the victim would suffer a severe trauma if forced to testify at trial. Dr. Stuckey further

testified that he believed that the victim was suffering from Post-Traumatic Stress Disorder caused by severe trauma and further psychological damage would likely result if she was required to testify at trial. The victim was present at the Protected Persons Hearing, testified, and was cross-examined by counsel for Petitioner. Moreover, at the Protected Persons Hearing, counsel for Petitioner objected to the admissibility of the video recorded forensic interview of the victim on the ground that the same would violate Petitioner's right to confrontation secured by the Sixth Amendment.

24. The trial court took admissibility of the video taped recording under advisement, and on September 29, 2008, issued its confidential Order. That Order provided, in relevant part, as follows:

> In this case, the court found that Dr. Stuckey's conclusions concerning the harm which the victim will suffer should she be required to testify at trial are supported by the evidence. Accordingly, the victim is deemed unavailable to testify. Defendant had the opportunity to depose the victim and to cross examine her at the admissibility hearing; therefore, Defendant's constitutional right to confront and cross-examine his accuser has been preserved.

25. During the jury trial in the underlying matter, the State offered the video recording of the victim's forensic interview as evidence. The record establishes that Duerring again objected and argued that admission of the video recorded statement would run afoul of Petitioner's rights under the Confrontation Clause of the Sixth Amendment. The Court, however, ruled that the child victim was unavailable as a witness and the video recording of his forensic interview would be admitted as evidence at trial.

26. It is well established that the Protected Person's Statute, if followed precisely, satisfies the constitutional guarantees of confrontation. . . . In addition, it is clear that counsel for Petitioner not only had the opportunity, but availed herself

thoroughly of that right, in cross-examination of the victim during the Protected Person's Hearing. Petitioner has not established that any error occurred regarding the admissibility of the video recorded interview. Accordingly, failure to challenge or object to the same cannot be the basis for ineffective assistance of trial counsel. Counsel did object, however, the court allowed the admission of the video recorded statement. Petitioner's dissatisfaction with this result does not give him the right to re-litigate the matter and does not amount to ineffective assistance of counsel simply because the issue was decided adversely to him.

Petitioner also contends that his appellate counsel was ineffective for not raising the issue of ineffective assistance of trial counsel on direct appeal with respect to the admission of the videotaped interview.

***

29. The record establishes that Attorney Hilgendorf raised both the issue of whether the admission of the video recording was error, and whether trial counsel was ineffective for not introducing a transcript of the subject video recording, on direct appeal. Essentially, Petitioner is simply combining these issues in an attempt to again raise them framed as an ineffective assistance of counsel claim, which is inappropriate as noted in paragraph 21 herein above. Clearly, appellate counsel was aware of, and did raise, the issue of error regarding the admission of the video recorded forensic interview of the victim. This claim is *res judicata* regardless of how it is framed and not available for post conviction review.

30. Even if the court considered the claim on the merits, it fails. During the evidentiary hearing on Petitioner's request for Post Conviction Relief, the only evidence presented regarding whether his appellate counsel was aware of the potential issue of counsel ineffectiveness for failing to challenge the admission of the videotape came from Petitioner's mother, Linda Richmond. Petitioner's appellate counsel was not called to testify. Ms.

Richmond testified that she and appellate counsel discussed various theories of ineffective assistance of counsel, the implications of challenging the admissibility of the video recorded interview, as well as strategic reasons as to why appellate counsel might choose to raise some issue and not others. Petitioner presented no evidence from any witness possessing the knowledge, experience, education, skill, and/or credibility as a legal professional in the State of Indiana who challenged appellate counsel's strategy in this case. Petitioner failed in his burden of showing that any potential unraised issues were more significant and/or clearly stronger than the issues raised. Thus, neither deficient performance nor likelihood of a different outcome had different issues been raised was established. This court is convinced that even if appellate counsel had presented the issue of admissibility of the video recorded interview in any different manner, that such claim would not have been treated differently by the Indiana Court of Appeals.

Appellant's App. pp. 9-15. Chenoweth now appeals the denial of his petition for post-conviction relief.

## I. Untimely Notice of Appeal

The State argues that Chenoweth's appeal should be dismissed because he did not file his Notice of Appeal within thirty days after the trial court issued its order denying the petition for post-conviction relief. *See* Ind. Appellate Rule 9. If a Notice of Appeal is not timely filed, the right to appeal is forfeited.[1] Here,

---

[1] Post-Conviction Rule 2(1) allows an eligible defendant to request permission to file a belated appeal where the failure to file a timely notice of appeal was not the petitioner's fault and the petitioner has been diligent in seeking permission to file a belated notice. Ind. Post-Conviction Rule 2(1)(a); *Cooper v. State*, 917 N.E.2d 667, 673 (Ind. 2009). The defendant may seek permission to file a belated notice of appeal of his conviction or sentence but not from an entry of judgment in a post-conviction relief proceeding. *See Taylor v. State*, 939 N.E.2d 1132, 1135 (Ind. Ct. App. 2011).

judgment was entered on August 1, 2014, and the Notice of Appeal should have been filed no later than September 2, 2014.[2] However, Chenoweth filed his Notice of Appeal on September 4, 2014, two days late.

[9] Failure to timely file a Notice of Appeal is not jurisdictional, but the appellant forfeits his right to an appeal absent "extraordinarily compelling reasons." *In re Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014). Moreover, our Supreme Court has observed:

> our appellate rules exist to facilitate the orderly presentation and disposition of appeals . . . and [as] our Court of Appeals has noted we are mindful that our procedural rules are merely means for achieving the ultimate end of orderly and speedy justice. This policy has been incorporated into our Rules of Appellate Procedure. *See* App. R. 1 (providing in part: "The Court may, upon the motion of a party or the Court's own motion, permit deviation from these Rules"). Thus, despite the "shall be forfeited" language of Rule 9(A), the Rules themselves provide a mechanism allowing this Court to resurrect an otherwise forfeited appeal.

*Id*. at 971-72 (internal quotations and citations omitted).

[10] Chenoweth is serving a forty-year sentence in the Department of Correction. While the Notice of Appeal in these proceedings was filed two days late, in general, Chenoweth has timely and diligently pursued the relief available to him. Under these facts and given our preference for deciding cases on their merits, we deny the State's request to dismiss Chenoweth's appeal.

---

[2] On September 1, 2014, the Clerk's Office was closed for observance of the Labor Day holiday.

## II. Post-Conviction Relief

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6), we cannot affirm the judgment on any legal basis but rather must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. *Id.* Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and

reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id.*

A. *Ineffective Assistance of Trial Counsel*

[13] First, Chenoweth contends that the post-conviction court clearly erred when it concluded that he waived his claim of ineffective assistance of trial counsel. Chenoweth raised a claim of ineffective assistance of trial counsel on direct appeal, and therefore, the trial court correctly determined that the issue is barred by the doctrine of res judicata.[3] *See Woods v. State*, 701 N.E.2d 1208, 1220 (Ind. 1998) (holding that if a defendant chooses to raise a claim of ineffective assistance of counsel on direct appeal, "the issue will be foreclosed from collateral review"); *see also Brewington v. State*, 7N.E.3d 946, 977 (Ind. 2014) (stating that "[r]aising ineffectiveness on direct appeal without the benefit of an additional post-conviction record is permissible, but the issue becomes res judicata and therefore unavailable for collateral review"). Because Chenoweth's freestanding claims and ineffective assistance of trial counsel claims are waived and/or barred by res judicata, only claims framed as ineffective assistance of appellate counsel are available in these post-conviction proceedings.

---

[3] Although a criminal defendant claiming ineffective assistance of trial counsel is at liberty to elect whether to present this claim on direct appeal or in post-conviction proceedings, it is well-settled that a post-conviction proceeding is generally the preferred forum for adjudicating claims of ineffective assistance of trial counsel because the presentation of such claims often requires the development of new evidence not present in the trial record. *See Jewell v. State*, 887 N.E.2d 939 (Ind. 2008)

B. *Ineffective Assistance of Appellate Counsel*

Chenoweth argues that his appellate counsel was ineffective for failing to argue that admission of the victim's videotaped forensic interview violated his Sixth Amendment right to "meaningful confrontation." Appellant's Br. at 33. When we review claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel: the post-conviction petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for the deficient performance of counsel, the result of the proceeding would have been different. *Manzano v. State*, 12 N.E.3d 321, 329 (Ind. Ct. App. 2014) (citing *Harris v. State*, 861 N.E.2d 1182, 1186 (Ind. 2007)), *trans. denied.*

To show that counsel was ineffective for failing to raise an issue on appeal, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Id.* To evaluate the performance prong when counsel failed to raise issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record, and (2) whether the unraised issues are clearly stronger than the raised issues. *Id.* If the analysis under this test demonstrates deficient performance, then we examine whether the issues which appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial. *Id*. at 329-30. Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on

direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id.* at 330.

[16] Chenoweth argues that his appellate counsel was ineffective for failing to argue that admission of the child's videotaped statement violated the Confrontation Clause and denied him a fair trial. Chenoweth also argues that his appellate counsel was deficient for failing to argue that trial counsel was ineffective because she did not challenge the trial court's finding that the victim was unavailable to testify at trial.

[17] To address these issues, we initially observe that in this case, the only direct evidence of molestation admitted at trial was the victim's videotaped forensic interview. Indiana Code section 35-37-4-6, known as the "protected person statute" or the "child hearsay statute," lists certain conditions under which evidence that is otherwise inadmissible may be admitted in cases involving certain crimes, including child molesting, committed against "protected persons." *J.A. v. State*, 904 N.E.2d 250, 255 (Ind. Ct. App. 2009).

[18] Because the victim was four-years old when she was molested, Chenoweth's victim qualified as a protected person, and therefore, the videotape of her forensic interview was admissible at trial if:

> after notice to the defendant of a hearing and of the defendant's right to be present, all of the following conditions are met:
>
>> (1) The court finds, in a hearing:
>>
>>> (A) conducted outside the presence of the jury; and

> (B) attended by the protected person in person or by using closed circuit television testimony as described in section 8(f) and 8(g) of this chapter;
>
> that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.
>
> > (2) The protected person:
> >
> > > (A) testifies at the trial; or
> > >
> > > (B) is found by the court to be unavailable as a witness for one (1) of the following reasons:
> > >
> > > > (i) From the testimony of a psychiatrist, physician, or psychologist, and other evidence, if any, the court finds that the protected person's testifying in the physical presence of the defendant will cause the protected person to suffer serious emotional distress such that the protected person cannot reasonably communicate.
> > > >
> > > > (ii) The protected person cannot participate in the trial for medical reasons.
> > > >
> > > > (iii) The court has determined that the protected person is incapable of understanding the nature and obligation of an oath.

I.C. § 35-37-4-6(d) & (e). The trial court found that Chenoweth's victim was unable to testify under subsection (e)(2)(B), making her videotaped statement admissible only if she was available for cross-examination "at the hearing described in subsection (e)(1)" or "when the statement or videotape was made." *See* I.C. § 35-37-4-6(f).

[19]    Chenoweth does not claim that the trial court failed to follow the procedures listed in section 35-37-4-6, and he had the opportunity to depose the victim and

to cross-examine her at the Protected Persons hearing. Therefore, we conclude that his appellate counsel was not ineffective for failing to argue on direct appeal that his Sixth Amendment right of confrontation was violated. *See Tyler v. State*, 903 N.E.2d 463 (Ind. 2009) (discussing how the protected persons statute addresses and protects the defendant's Sixth Amendment right of confrontation); *Howard v. State*, 853 N.E.2d 461, 470 (Ind. 2006) (stating that "prior testimony from a subsequently unavailable witness is admissible at a subsequent trial, provided the defendant had the opportunity to confront the witness when the testimony was originally given").

[20] Chenoweth also claims that his appellate counsel was deficient for failing to argue that his trial counsel was ineffective when she failed to challenge the trial court's finding that the victim was unavailable to testify for medical reasons.[4] In support of this argument, Chenoweth relies on *Maryland v. Craig*, 497 U.S. 836 (1990) and *Coy v. Iowa*, 487 U.S. 1012 (1988). However, those cases address violations of a defendant's Sixth Amendment right of confrontation where the witness was available at trial but shielded from the defendant's view while testifying.

[21] In *Coy*, the use of a screen to shield the child witnesses from the defendant was held to be unconstitutional in part because there were "no individualized findings that these particular witnesses needed special protection[.]" 487 U.S. at

---

[4] As we noted above, Chenoweth's trial counsel repeatedly objected to admission of the victim's videotaped interview on the grounds that its admission violated the Confrontation Clause.

1021. In *Craig*, the Court concluded that "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." 497 U.S. at 853. Therefore, the *Craig* court held that "if the State makes [a case-specific] showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." *Id*. at 855. The statute at issue in *Craig* allowed the child victim to testify via a one-way closed circuit television.[5]

[22] These cases do not support Chenoweth's argument that the trial court unconstitutionally expanded the terms of Indiana Code section 35-37-4-6(e) when it concluded that the victim was unavailable to testify for medical reasons. Therefore, we reject Chenoweth's claim that appellate counsel's performance was deficient because he failed to argue that trial counsel was ineffective due to her "demonstrated ignorance of the law," i.e., her failure to utilize *Coy* and *Craig* to challenge the unavailability of the child victim. Appellant's Br. at 35.

[23] Moreover, in its findings of fact and conclusions of law, the post-conviction court noted:

---

[5] Indiana has a similar statute authorizing use of closed circuit television for victims who qualify as "protected persons" under Indiana Code section 35-37-4-6. I.C. 35-37-4-8.

> During the Protected Person's hearing, the State presented evidence that the victim, a minor child, was suffering from a medical condition. Specifically, Dr. Allen J. Stuckey, M.D., a board certified physician in both pediatrics and psychiatry, testified that he believed the victim would suffer a severe trauma if forced to testify at trial. Dr. Stuckey further testified that he believed that *the victim was suffering from Post-Traumatic Stress Disorder caused by severe trauma* and further psychological damage would likely result if she was required to testify at trial.

Appellant's App. p. 12 (emphasis added). The victim's unavailability for medical reasons was established by Dr. Stuckey's testimony.[6] Therefore, appellate counsel's performance was not deficient when he failed to argue that trial counsel was ineffective because she did not challenge the trial court's determination that the victim was unavailable as that term is defined in Indiana Code section 35-37-4-6(e). Consequently, Chenoweth has not established that the outcome of his direct appeal would have been different had this argument been raised.

[24] For all of these reasons, we conclude that Chenoweth has not established that appellate counsel's performance fell below an objective standard of reasonableness because the unraised issues are not clearly stronger than the issues appellate counsel raised on direct appeal.

---

[6] Contrary to Chenoweth's claim, the trial court did not determine that the victim was unavailable for the sole reason that testifying would be difficult for her and cause her additional trauma.

## Conclusion

We deny the State's request to dismiss Chenoweth's appeal of the denial of his petition for post-conviction relief for untimeliness. Chenoweth's claim of ineffective assistance of trial counsel is barred by the doctrine of res judicata. Also, Chenoweth has not established that his appellate counsel was ineffective. Therefore, we affirm the trial court's order denying Chenoweth's petition for post-conviction relief.

Affirmed.

May, J., and Robb, J., concur.