

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Laura L. Volk
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jennings Daugherty, | April 5, 2016 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 89A01-1510-PC-1532 |
| v. | Appeal from the Wayne Superior Court |
| State of Indiana, | The Honorable Gregory A. Horn, Judge |
| *Appellee-Respondent.* | Trial Court Cause No. 89D02-1210-PC-10 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Jennings Daugherty (Daugherty), appeals the post-convictions court's denial of his petition for post-conviction relief.

We affirm, in part, reverse, in part, and remand for resentencing.

## ISSUES

Daugherty raises two issues on appeal, which we restate as follows:

(1)     Whether Daugherty was denied the effective assistance of appellate counsel where his counsel failed to argue that his two consecutive sentences for unlawful possession of a firearm by a serious violent felon (SVF) convictions constituted an impermissible double enhancement; and

(2)     Whether Daugherty was denied the effective assistance of appellate counsel where his counsel failed to argue that his aggregate sentence of 33 years exceeded the statutory limitation for consecutive sentences arising out of a single episode of criminal conduct.

## FACTS AND PROCEDURAL HISTORY

We adopt this court's statement of facts and procedural history as set forth in our memorandum decision issued in Daugherty's direct appeal, *Daugherty v. State,* No. 89A01–1010–CR–520 (Ind. Ct. App. May 9, 2011), *trans. vacated*, (internal citations to the record omitted):

At 2:48 a.m. on May 26, 2007, Captain Thomas Porfidio [(Captain Porfidio)] of the Richmond Police Department was dispatched to Bertie's Bar in Richmond upon receiving a complaint of a bar fight. Upon arriving, Captain Porfidio spoke with the bartender who indicated that Daugherty had shoved her. The bartender further indicated that Daugherty was sitting in a van that was parked across the street from the bar, and requested that Daugherty be banned from returning to the bar. The bartender indicated, however, that she did not wish to press charges against Daugherty.

After speaking to the bartender, Captain Porfidio approached the van in which Daugherty was sitting in the front passenger seat. Captain Porfidio observed four individuals, including Daugherty, in the van. By this time, Officer Kevin Smith [(Officer Smith)], who had also responded to the scene, was speaking to Daugherty. During the course of his conversation with Daugherty, Officer Smith asked Daugherty to step out of the van. Captain Porfidio and Officer Smith observed as Daugherty stumbled and nearly fell while attempting to get out of the van. Daugherty also exhibited multiple signs of intoxication, including the strong odor of alcohol; red, bloodshot, and watery eyes; thick-tongued, slow speech; and slow, fumbling manual dexterity. Both Captain Porfidio and Officer Smith determined based on their training as police officers that Daugherty was intoxicated and, thus, incapable of driving. The officers instructed one of the other individuals in the van to drive Daugherty home where he could "sleep it off."

Forty-seven minutes later, at 3:35 a.m., Captain Porfidio was patrolling another area of Richmond when he saw the van in which Daugherty was earlier sitting. Captain Porfidio pulled alongside the van at a traffic light and observed that Daugherty was driving the vehicle. Captain Porfidio activated his emergency lights and initiated a traffic stop. Initially, Daugherty pulled over to the curb, but started to slowly drive away as

Captain Porfidio opened the door of his marked police cruiser. Captain Porfidio closed his door and followed Daugherty until he again pulled over to the curb. Daugherty attempted to slowly drive away a second time as Captain Porfidio opened his cruiser door. Daugherty pulled into a parking lot where he again stopped, only to slowly drive away as Captain Porfidio again attempted to approach his vehicle. Daugherty stopped the van when he could no longer drive forward without driving into a building.

Officers Smith and Ami Miller [(Officer Miller)] arrived as Captain Porfidio approached the driver's side of the van and asked to see Daugherty's identification. In attempting to comply with Captain Porfidio's request, Daugherty fumbled with his wallet and dropped it into his lap. Captain Porfidio shined his flashlight on the wallet and observed the "butt-end" of a pistol sticking up from between Daugherty's legs. Captain Porfidio called out, "gun," stepped back, and drew his service weapon. At the same time, Officer Miller drew her taser, stepped toward the vehicle, and tased Daugherty.

Captain Porfidio pulled Daugherty out of the vehicle while the taser was still cycling, and the pistol that was in Daugherty's lap fell to the ground and was recovered by police. Police also recovered a rifle that was found on the front floorboard of Daugherty's vehicle. The rifle was within reach of the driver's seat where Daugherty had been sitting. Both weapons were loaded. Daugherty was taken to a local hospital where he was hostile to the officers. Daugherty [spat] at the officers, threatened to kill them and their families, and threatened to rape their wives. The officers later testified that Daugherty's threats put them in fear for both their personal safety and their families' safety.

Later that day, Daugherty was charged with Class A misdemeanor carrying a handgun without a license, Class D felony intimidation[, Ind. Code § 35–45–2–1(a)(2); (b)(1)(B)(i)

(2006)], Class D felony operating a motor vehicle while intoxicated, Class D felony resisting law enforcement, and two counts of Class B felony possession of a firearm by a serious violent felon[, I.C. § 35-47-4-5(c)]. The State further alleged that the Class A misdemeanor carrying a handgun charge should be enhanced to a Class C felony because Daugherty had a prior felony conviction. Daugherty was also alleged to be a habitual offender. On August 14, 2009, Daugherty filed a motion to suppress the evidence recovered following what he alleged was an illegal traffic stop by Captain Porfidio. The trial court denied Daugherty's motion to suppress on February 16, 2010, and subsequently denied his request that the ruling be certified for interlocutory appeal.

During an April 9, 2010 pre-trial hearing, Daugherty waived his right to a jury trial and indicated that he would stipulate to being a habitual offender if convicted of the underlying crimes. Daugherty filed a second motion to suppress on April 13, 2010. Daugherty failed to appear on the morning of his April 19, 2010 bench trial, and the trial was conducted, over his counsel's objection, without Daugherty present. The State dismissed the resisting law enforcement charge. Upon reviewing the evidence presented by the parties, the trial court denied Daugherty's second motion to suppress and found Daugherty guilty of the remaining counts as charged.

On July 20, 2010, the State requested permission to amend its habitual offender allegation by replacing two of Daugherty's alleged felony convictions with different felony convictions because the State subsequently learned that the two alleged felony convictions had previously been reversed by the Indiana Supreme Court. Following a hearing, the trial court granted the State's request and allowed the amendment. Daugherty subsequently admitted to being a habitual offender.

At sentencing, the State moved to set aside the Class C felony carrying a handgun without a license conviction out of double jeopardy concerns. The trial court imposed a three-year sentence for the intimidation conviction that was to run concurrently to a one-and-one-half-year sentence for the operating while intoxicated conviction, but consecutively to the two consecutive fifteen-year sentences for each of the possession of a firearm by a serious violent felon convictions. The trial court enhanced Daugherty's sentence by an additional twenty years as a result of his status as a habitual offender, for an aggregate fifty-three-year sentence.

[5] On May 9, 2011, we affirmed the trial court's judgment. On October 29, 2012, Daugherty filed a *pro se* petition for post-conviction relief, which was amended by his counsel on July 15, 2014. On December 3, 2014, the parties jointly filed an Agreement to Vacate Daugherty's Habitual Offender Finding and Resulting Enhanced Sentence on Count V. On December 8, 2014, the trial court accepted the agreement and reduced Daugherty's aggregate sentence to 33 years. On July 8, 2015, the post-conviction court held an evidentiary hearing on Daugherty's petition for post-conviction relief. Daugherty's appellate counsel was the sole witness at the hearing. He testified that he raised four issues on appeal: (1) the trial court's denial of Daugherty's motion to suppress constituted an abuse of the court's discretion; (2) Daugherty's multiple convictions for possession of a firearm by an SVF violated the prohibition against double jeopardy; (3) the trial court erred in allowing the State to amend the habitual offender information; and (4) Daugherty's sentence was inappropriate. Out of these issues, in appellate counsel's opinion, the double jeopardy violation and the inappropriateness of Daugherty's sentence claims

were the strongest arguments. He testified that he did not consider raising a claim that the consecutive sentences for two SVF convictions constituted an impermissible double enhancement and a claim that Daugherty's aggregate sentence exceeded the statutory limitation for consecutive sentences arising out of a single episode of criminal conduct. On September 3, 2015, the post-conviction court entered its Findings of Fact and Conclusions of Law, denying the requested relief.

[6] Daugherty now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[7] In a post-conviction proceeding, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Overstreet v. State,* 877 N.E.2d 144, 151 (Ind. 2007). When challenging the denial of post-conviction relief, the petitioner appeals a negative judgment. *Overstreet,* 877 N.E.2d at 151. To prevail, the petitioner must show that the evidence leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.* We will disturb the post-conviction court's decision only where the evidence is without conflict and leads to but one conclusion and the post-conviction court reached the opposite conclusion. *Henley v. State,* 881 N.E.2d 639, 643–44 (Ind. 2008).

[8] Where the post-conviction court enters findings of fact and conclusions of law, as in the instant case, we do not defer to the post-conviction court's legal

conclusions; the post-conviction court's findings and judgment will be reversed, however, only upon a showing of clear error that leaves us with a definite and firm conviction that a mistake has been made. *Overstreet*, 877 N.E.2d at 151. Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001). Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. *Id.* If an issue was known and available, but not raised on direct appeal, it is waived. *Id.*

[9] A defendant claiming a violation of the right of effective assistance of counsel must establish the two components set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). *Williams v. Taylor,* 529 U.S. 362, 390 (2000). First, the defendant must show that counsel's performance was deficient. *Strickland,* 466 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment. *Id.* Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

[10] Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Id.* at 689. A strong presumption

arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The *Strickland* court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* at 689. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Bieghler v. State,* 690 N.E.2d 188, 199 (Ind. 1997). The two prongs of the *Strickland* test are separate and independent inquiries. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Williams v. State,* 706 N.E.2d 149, 154 (Ind. 1999) (quoting *Strickland,* 466 U.S. at 697).

[11]     Daugherty alleges that his appellate counsel was ineffective. Our supreme court has recognized three categories of alleged appellate counsel ineffectiveness: (1) denying access to an appeal, (2) failing to raise issues, and (3) failing to present issues competently. *Bieghler,* 690 N.E.2d at 193-95. Daugherty specifically asserts that his appellate counsel failed to raise two issues: that the consecutive sentences for his two SVF convictions constituted an impermissible double enhancement and that Daugherty's aggregate sentence exceeded the statutory limitation for consecutive sentences arising out of a single episode of criminal conduct. His claims fall into *Bieghler's* second category. When assessing claims under the second category, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable. *Id.* Finally, we review

matters of statutory interpretations *de novo* because they present pure questions of law. *Nicoson v. State*, 938 N.E.2d 660, 663 (Ind. 2010).

## II. *Double Enhancement*

Daugherty argues his appellate counsel was ineffective because he failed to raise a claim that the imposition of two consecutive sentences for possession of a firearm by an SVF, based on a single prior felony conviction, constituted an impermissible double enhancement. Generally, double enhancements are not permissible. *Dye v State*, 972 N.E.2d 853, 856 (Ind. 2012), *aff'd on reh'g*, 984 N.E.2d 625 (Ind. 2013). But double enhancements are permissible when there is explicit legislative direction authorizing them. *Id*. at 857. There are three types of statutes authorizing enhanced sentences for repeat offenders: the general habitual offender statute, specialized habitual offender statutes, and progressive-penalty statutes. *Id.* The first type, the "general habitual offender statute," provides that a person convicted of three felonies of any kind is called a "habitual offender." I.C. § 35–50–2–8; *Beldon v. State*, 926 N.E.2d 480, 482 (Ind. 2010). Habitual offenders are subject to an additional term of years beyond that imposed for the underlying felony. *Beldon*, 926 N.E.2d at 482. The second type, the "specialized habitual offender statutes," authorize sentencing enhancements where the defendant has been convicted of a certain number of similar offenses. *Id.*; *Dye*, 972 N.E.2d at 857; *see, e.g.,* I.C. § 35–50–2–14 (repeat sex offenders); I.C. § 9–30–10–4 (habitual traffic violators). The third type, the "progressive-penalty statutes," which are the most specialized, elevate the level of an offense (with a correspondingly enhanced sentence) where the defendant

has previously been convicted of a particular offense. *Dye*, 972 N.E.2d at 857. Examples of the progressive penalty statutes include the statute at issue here, Indiana Code section 35-47-4-5(c). *See Dye*, 972 N.E.2d at 858 (identifying the SVF statute as a progressive penalty statute). Double enhancement issues arise where more than one of these statutes apply to the defendant at the same time. *Id*. at 857.

[13] As a general rule, "*absent explicit legislative direction,* a sentence imposed following conviction under a progressive penalty statute may not be increased further under either the general habitual offender statute or a specialized habitual offender statute." *Id.* Similarly, a conviction under a specialized habitual offender statute cannot be further enhanced under the general habitual offender statute in the absence of explicit legislative direction. *Id.* In applying the general rule against double enhancements, first, we determine whether the defendant's underlying conviction is pursuant to a progressive-penalty scheme or a specialized habitual-offender scheme. *Id.* at 858. If not, then there is no double-enhancement problem. *Id*. But if so, then the general rule against double enhancements is triggered and we will invalidate a double enhancement unless the language of the relevant statute possesses the requisite "explicit legislative direction" to impose a double enhancement. *Id.*

[14] In *Dye*, applying this analysis, our supreme court held that the defendant's habitual offender enhancement violated the rule against double enhancement. *Id*. First, the *Dye* court held that the defendant's SVF conviction was a progressive-penalty statute. *Id*. Second, the *Dye* court held that the general

habitual offender statute did not include explicit legislative direction authorizing double enhancement. *Id*. As such, the *Dye* court concluded that a double enhancement was not proper where the underlying conviction was for unlawful possession of a firearm by an SVF. *Id*.

[15] In the present case, in essence, Daugherty urges us to extend the *Dye* court's decision to cases involving consecutive sentences for two progressive-penalty statutes. Daugherty specifically asserts that, because his two SVF convictions were "already enhanced" and each was supported by the same underlying felony, ordering the sentences to run consecutively violated the double enhancement prohibition. (Appellant's Br. p. 16). We disagree. First, Daugherty starts off on the wrong foot. He assumes that the underlying felony in his case was the same as the underlying felony used to enhance the defendant's sentence in *Dye*.[1] Daugherty's underlying felony was used to establish his SVF status, and the SVF status, in turn, was an element in each SVF count; whereas in *Dye*, the underlying felony was used to establish the SVF status in one SVF count and, what distinguishes *Dye* from the present case, the underlying felony was used as an enhancement for the habitual offender adjudication. *See Dye*, 972 N.E.2d at 858. Second, the *Dye* court clearly stated that the "[d]ouble enhancement issues arise where *more than one of the* [*three types of repeat offender*] *statutes*" apply to the defendant at the same time. *Id*. at 857 (emphasis added). The present issue involves only the progressive-penalty

---

[1] This would equally apply to other cases cited by Daugherty in support of his argument.

statute, the third type of repeat offender statutes, and the other two types were not implicated.[2] Third, none of the authorities cited by Daugherty support his argument because none of the cases dealt with two separate SVF convictions. *See id*. at 858 (an SVF conviction and a habitual offender adjudication); *Mills v. State*, 868 N.E.2d 446, 452 (Ind. 2007) (an SVF conviction and a habitual offender adjudication); *Sweatt v. State*, 887 N.E.2d 81, 83-84 (Ind. 2008) (an SVF conviction and a habitual offender adjudication). Fourth, the SVF statute itself is unambiguous—"[an] [SVF] who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a[n] [SVF], a Class B felony." I.C. § 35-47-4-5(c) (2006). The statute provides that each unlawful possession of a weapon is considered to be a separate and distinct act, and therefore each unlawful possession is a separate and distinct offense. *Taylor v. State*, 929 N.E.2d 912, 921 (Ind. Ct. App. 2010), *trans. denied*. Finally, we had already addressed Daugherty's claim of whether the trial court abused its discretion in imposing both enhanced and consecutive sentences in 2011, when we held that his consecutive sentences were not inappropriate in his direct appeal.

[16] Because Daugherty's single underlying felony conviction served as an element in each SVF count, not as an enhancement, and because each SVF count was a separate and distinct offense, we conclude that the imposition of two sentences for two counts of unlawful possession of a firearm by an SVF to run

---

[2] Daugherty's sentence enhancement under the habitual offender statute, the first type of repeat offender statutes, was successfully vacated on December 8, 2014, and his aggregate sentence was reduced from 53 to 33 years of imprisonment.

consecutively was not an improper double enhancement under Indiana law and the circumstances of this case. Further, there was no reasonable probability that the result of the proceeding would have been any different even if appellate counsel would have made the claim. As such, we cannot conclude that Daugherty's appellate counsel was ineffective for failing to raise the double enhancement claim.

### III. *Consecutive Sentencing*

As to the second instance of ineffective assistance of counsel claim, Daugherty contends that his sentence for the intimidation conviction ordered to run consecutively to the other sentences exceeded the maximum allowed punishment pursuant to Indiana Code section 35-50-1-2 (2006), which, at the time of Daugherty's crimes, provided:

> The court may order terms of imprisonment to be served consecutively . . . . However, except for crimes of violence, the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Both parties seem to agree that Daugherty's SVF convictions were not covered by the definition of a "crime of violence" at the time.[3] *See* I.C. § 35-50-1-2.

---

[3] The statute contains an exhaustive list of violent crimes. The crime of unlawful possession of a firearm by an SVF was added to the list in 2015.

However, both parties disagree as to the definition of a "single episode of criminal conduct," which is dispositive here. *See* I.C. § 35-50-1-2. A single episode of criminal conduct is defined as "an offense or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b).

[19] Here, Daugherty was stopped for driving while intoxicated. When the police officers discovered a handgun between his legs, Daugherty was tased and taken into custody. Police also recovered an SKS assault rifle on the vehicle's floorboard. Both weapons were loaded and within Daugherty's immediate reach. Daugherty was taken to a hospital where he was hostile to the officers. He spat at the officers, threatened to kill them and their families, and threatened to rape their wives. The officers later testified that Daugherty's threats put them in fear for both their personal safety and their families' safety.

[20] Daugherty claims that these events constituted a single episode and cites to *Purdy v. State*, 727 N.E.2d 1091 (Ind. Ct. App. 2000), *trans. denied*. In *Purdy*, the defendant went to the house of his former girlfriend despite a court's order not to have contact with her. *Id.* at 1092. The defendant pounded on her door and threatened to kick it in. *Id.* The former girlfriend, who did not have a telephone in her house, tried to run next door to use the telephone at the Village Pantry. *Id.* The defendant, however, grabbed her by the shoulders, bruising her. *Id.* When the police arrived and attempted to handcuff the defendant, he fought back—kicked and spat at the officers, and attempted to flee. *Id.* As the officers placed the defendant in a vehicle, he threatened to kill one of them. *Id.*

The State charged the defendant with felony intimidation, resisting law enforcement, and battery. *Id.* The *Purdy* court held that the defendant's actions constituted a single episode because "all of his actions took place during a relatively short period of time and all were related to his assault on [his former girlfriend]." *Id.* at 1093.

[21] The State, in turn, maintains that because Daugherty's appellate counsel did not raise the claim on direct appeal, and because appellate counsel's decision was "clothed" with "the strong presumption of competency," Daugherty "can show neither deficient performance, nor prejudice stemming from [appellate counsel's] election," and his claim therefore fails. (Appellee's Br. pp. 24-25). Because this issue involves statutory interpretation, we reiterate that we review it *de novo*. *Nicoson*, 938 N.E.2d at 663.

[22] The State further asserts that Daugherty's argument "would have failed in any case" because the events did not constitute a single episode. (Appellee's Br. p. 24). In support, instead of addressing the negative authority presented by Daugherty, the State cites to our decision in *Newman* and argues that the events of the instant case were similar to the events in *Newman*. *See Newman v. State*, 690 N.E.2d 735 (Ind. Ct. App. 1998). In *Newman*, police officers were dispatched to a tavern in response to a burglary report. *Id.* at 736. When they arrived, the defendant was sitting in his car in the parking lot of the tavern. *Id.* The officers stopped in front of the defendant's vehicle and ordered him three times to get out of his car. *Id.* The defendant refused to get out of his car and sped away from the police. *Id.* The police officers pursued the defendant's

vehicle until he ultimately crashed into a cement wall. *Id*. Following the crash, the officers discovered cigarettes and money taken by the defendant from the tavern. *Id*. They placed the defendant under arrest and summoned an ambulance to transport the defendant to a hospital for the treatment of the injuries he received in the crash. *Id*. After the defendant and the officers arrived at the hospital, hospital personnel requested that the defendant not be handcuffed in order that he be properly treated. *Id*. When no officer was present in the treatment room, the defendant managed to flee down the hospital corridor as hospital personnel yelled for assistance. *Id*. Police officers recaptured the defendant and subsequently transported him to jail. *Id*. The defendant pled guilty to burglary, theft, escape, resisting law enforcement, and driving while suspended. *Id*. The *Newman* court found that the defendant's actions constituted three separate episodes: burglary and theft, being the first distinct episode; resisting law enforcement and fleeing, as the second distinct episode; and escape in the hospital, as the third distinct episode. *Id*. at 737. The *Newman* court concluded that each of these episodes was sufficiently unrelated and each could have been described independently without referring to the specific details of the other episodes. *Id*. As such, the *Newman* court held that the defendant's crimes were committed during three distinct episodes of criminal conduct. *Id*.

[23] In reaching its decision and to "illuminate our legislature's definition" of the term "episode," the *Newman* court examined our sister states' approaches. *Id*.

The *Purdy* court, on the other hand, examined the statute's underlying policy and goals. *Purdy*, 727 N.E.2d at 1093. We prefer the *Purdy* court's approach.

[24] We do not and may not interpret a statute that is facially clear and unambiguous. *Id*. Rather, we give the statute its plain and clear meaning. *Id*. However, when the statute's application results in opposite conclusions, as in the present case where a series of connected events are treated as one episode by one party and as several isolated episodes by another, we seek to ascertain and give effect to the legislature's intent. *Id*. In doing so, we read the act as a whole and strive to give effect to all of the provisions, so that no part is held meaningless if it can be reconciled with the rest of the statute. *Id*. Furthermore, we presume that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id*.

[25] Indiana Code section 35-50-1-2 imposes a previously nonexistent limitation upon a trial court's discretion to impose consecutive sentences, and is therefore ameliorative in nature. *Id*. at 1094. An "ameliorative" statute is one that has the effect of *decreasing* the penalty for an offense. *Id*. (emphasis in original). With these goals in mind, we fail to see how the interpretation of this ameliorative statute, which clearly reads that a single episode includes "a connected series of offenses that are closely related in time, place, and circumstance," could result in an *increase* of the penalty by abstract separation of the connected events in the parking lot and the hospital. *See* I.C. § 35-50-1-2 (2006). The legislature could not have intended this result in 2006. As a matter of fact, once the legislature decided to change its position and give the trial

courts the discretion to impose consecutive sentences in SVF cases, it changed the statute in 2015 and included the SVF convictions to the list of crimes of violence.

[26] Further, even though there was a change of location between the tasing and discovery of two firearms episode and the intimidation episode, we fail to see how the change of location separated the two events to the extent that each could have been described independently without referring to the specific details of the other episode. To prove the intimidation episode, the State was required to show that the police officers were placed "in fear of retaliation for a prior lawful act." (Petitioner's Ex. 1 p. 20). The only way to accomplish this was to refer to Daugherty's arrest, tasing, and discovery of two loaded firearms within his immediate reach. All of Daugherty's actions took place during a relatively short period of time and all were related to his intoxication and possession of the firearms.

[27] As such, because Daugherty's offenses were committed in a single episode, his aggregate sentence cannot "exceed the advisory sentence for a felony which is one (1) class of felony higher that the most serious of the felonies for which [Daugherty] has been convicted." I.C. § 35-50-1-2(c) (2006). Daugherty's most serious conviction was a Class B felony conviction for unlawful possession of a firearm by an SVF, limiting his aggregate sentence to 30 years, the advisory sentence for a Class A felony. I.C. § 35-50-1-2(c); -2-4 (2006).

[28] Appellate courts are duty bound to correct sentences that violate the trial court's authority to impose consecutive sentences under Indiana Code section 35-50-1-2. *Becker v. State*, 695 N.E.2d 968, 973 (Ind. Ct. App. 1998). Applying our standards of review, we conclude that appellate counsel's performance was deficient and that there was a reasonable probability that, but for appellate counsel's failure to raise the claim, the result of the proceeding would have been different. The post-conviction court should have corrected the sentencing error. We reverse the post-conviction court's denial of Daugherty's request for relief as to the intimidation conviction and remand with instructions to resentence Daugherty so that his sentence for the intimidation conviction runs concurrently to the other sentences and his aggregate term is limited to 30 years.

## CONCLUSION

[29] Based on the foregoing, we conclude that Daugherty was not denied the effective assistance of appellate counsel when counsel did not raise the double enhancement issue. However, we conclude that Daugherty was denied the effective assistance of appellate counsel when counsel did not raise the issue of statutory limitation for consecutive sentences arising out of a single episode of criminal conduct.

[30] Affirmed, in part, reversed, in part, and remanded for resentencing consistent with this decision.

[31] Najam, J. and May, J. concur