## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 05 2020, 10:56 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Talisha R. Griffin
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Steven J. Hosler
Samantha M. Sumcad
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew Christopher Yost, *Appellant-Defendant,* | June 5, 2020 |
| | Court of Appeals Case No. 19A-CR-2834 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Grant W. Hawkins, Judge |
| | Trial Court Cause No. 49G05-1909-F5-35951 |

**Bailey, Judge.**

# Case Summary

Matthew Christopher Yost ("Yost") appeals his five convictions of criminal recklessness, as Level 5 felonies,[1] and his sentence. We dismiss, without prejudice, his appeal of his convictions, and we reverse his sentence and remand with instructions.

# Issues

Yost raises two issues which we restate as follows:

I. Whether Yost may challenge his convictions on direct appeal after pleading guilty without a plea agreement.

II. Whether the trial court abused its discretion when it imposed consecutive terms of imprisonment.

# Facts and Procedural History

On September 12, 2019, the State charged Yost with five counts of criminal recklessness, as Level 5 felonies. At his October 9 guilty plea hearing, Yost pled guilty to all five counts. At that hearing, Yost admitted as follows.

On September 7, 2019, Yost reported to police that there was a silver Dodge Charger parked in front of his house and that the occupants of the Charger were firing guns and attempting to enter his house. When Indianapolis Metropolitan

---

[1] Ind. Code § 35-42-2-2(a), (b)(2).

Police Department ("IMPD") Officer Joshua Brown ("Officer Brown") and Detective Theodore Brink "(Det. Brink") arrived at the scene, there was a silver Dodge Charger there but no individuals firing any weapons or trying to enter the house. The officers were in marked cars and in full police uniforms. The officers saw Yost look out through the blinds of a window in his house several times, but Yost relayed through dispatch that he did not see officers outside of his house. Dispatch then hung up so that the officers on the scene could attempt to communicate with Yost.

[5] After hanging up, Yost opened fire on the IMPD officers, firing bullets through the French doors on the east side of the house towards the front yard and street where Det. Brink and Officer Brown were located. The officers took cover and requested back up. At least one of the bullets fired towards the officers hit the house behind where they had taken cover. Yost also fired bullets into the house of his neighbor, Mary Glaser ("Glaser"), and into an alley between Yost and Glaser's houses. Yost reported that at the time of the incident he was suffering from withdrawal of Benzodiazepine, his mental health medication.

[6] Yost having admitted to a factual basis for his guilty plea, the trial court entered convictions on all five criminal recklessness counts.

[7] At Yost's November 6 sentencing hearing, the State offered testimony from IMPD officers as to the timing in between the rounds of gunshots during the September 7 incident. The first volley, comprised of two shots, was fired by Yost through the French double doors on the side of Yost's house and towards

Officer Brown and Det. Brink. After approximately two minutes of silence, Yost fired a second volley of gunshot rounds, a number of which ricocheted off the sidewalk in between the silver Dodge and the black CRV behind which the officers had taken cover. During that volley, Det. Brink also heard gunshot rounds hitting buildings. Yost also fired gunshot rounds at Glaser's house. Glaser was at a window looking across the side yard at Yost's French double doors when Yost fired ten rounds at her house, three of which entered the house.

[8]     A third volley of gunshot rounds began approximately eight to ten minutes after the second volley. The third volley included four rounds which Det. Brink believed were fired from the back of Yost's house towards other officers who had taken up position there. After the third volley ended, Det. Brink saw Yost open a window at the front of the house, yell something, and then close the window after Det. Brink called for Yost to show him his hands. Approximately ten minutes after the third volley, Yost fired another single gunshot toward the alley behind his and Glaser's houses. Then a special weapons and tactics ("SWAT") team arrived and ordered Yost to exit his house. Yost complied and was arrested.

[9]     From this incident, Yost was charged with five separate offenses. Counts I and III were based on the second volley of gunshot rounds fired at Glaser's house and into the sidewalk and street in front of Yost's house, respectively. Count II was based on a round of gunshots hitting Lexington Avenue after passing Det. Brink during one of the first three volleys. Count IV stemmed from the first

volley of gunshot rounds fired at the sidewalk and street between Det. Brink and Officer Brown. And, Count V was based on the single gunshot fired into the alley between Yost's and Glaser's house approximately ten minutes after the third volley.

[10] At the sentencing hearing, the State also presented evidence of Yost's extensive criminal history. The trial court sentenced Yost to an aggregate fifteen-year term of imprisonment. Specifically, the court sentenced Yost to six years each on Counts I and III with both counts running concurrently; three years on Count II, which was to run concurrently with all other counts; six years on Count IV to be served consecutively to Counts I and III; and three years on Count V to be served consecutively to Count IV. Yost now appeals his convictions and his sentence.

# Discussion and Decision

## Appeal of Convictions

[11] Yost directly appeals his convictions as violations of the constitutional prohibition against double jeopardy, despite the fact that he pled guilty to all five convictions. However, it is well-settled that a conviction based on a guilty plea may not be challenged by direct appeal, *Tumulty v. State*, 666 N.E.2d 394, 395 (Ind. 1996); rather, it must be challenged through a petition for post-conviction relief, *Brightman v. State*, 758 N.E.2d 41, 44 (Ind. 2001). As we recently explained in *Hoskins v. State*, there are

> [t]wo exceptions to the prohibition on challenging a guilty plea on direct appeal…. First, a person who pleads guilty is entitled to contest on direct appeal the merits of a trial court's *sentencing* decision where the trial court exercised sentencing discretion. *Collins v. State*, 817 N.E.2d 230 (Ind. 2004). Further, a person who pleads guilty is entitled to contest on direct appeal the trial court's discretion in *denying withdrawal of the guilty plea* prior to sentencing. *Brightman v. State*, 758 N.E.2d [41, 44 (Ind. 2001)].

143 N.E.3d 358, 360 (Ind. Ct. App. 2020) (emphasis added) (quoting *Creekmore v. State*, 853 N.E.2d 523, 532-33 (Ind. Ct. App. 2006), *clarified on denial of reh'g*, 858 N.E.2d 230). *See also Hayes v. State*, 906 N.E.2d 819, 821 n.1 (Ind. 2009) (noting that, under *Tumulty v. State,* Hayes could not have directly appealed his conviction because he pled guilty, and holding the Court of Appeals acted contrary to *Tumulty* when it reversed Hayes's conviction sua sponte); *Mapp v. State*, 770 N.E.2d 332, 334 (Ind. 2002) (reaching same conclusion within the context of a direct appeal based on double jeopardy grounds). Neither exception discussed in *Hoskins* applies here; therefore, Yost may not challenge his convictions through a direct appeal.

[12] Yost asserts that the inability to bring a direct appeal of a conviction to which a defendant pled guilty applies only when there is a plea agreement, not when there is an "open" guilty plea, such as his, where the trial court is left with sentencing discretion. *E.g.*, *Collins*, 817 N.E.2d at 231. However, the cases

Yost cites are either inapplicable[2] or contrary to Indiana Supreme Court precedent.[3]

[13] Because Yost's challenge to his convictions cannot be brought on direct appeal, we dismiss his appeal of his convictions without prejudice as to his ability to present his claim in a petition for post-conviction relief. *See Hoskins*, 143 N.E.3d at 361.

## Consecutive Sentences

[14] Yost also challenges his sentence, and that is a challenge that he may—indeed, must—raise in a direct appeal, if at all. *Kling v. State*, 837 N.E.2d 502, 504 (Ind. 2005) (citing *Collins*, 817 N.E.2d at 230). Specifically, Yost contends that the trial court erred when it imposed consecutive terms of imprisonment that exceeded the maximum term allowed under Indiana Code Section 35-50-1-2(d)(2). A trial court has discretion to sentence a defendant to consecutive or concurrent terms of imprisonment. I.C. § 35-50-1-2(c); *see also Cardwell v. State*,

---

[2] *Graham v. State*, 903 N.E.2d 538, 540 (Ind. Ct. App. 2009), involved a challenge to a sentence, not a conviction. And *McElroy v. State*, 864 N.E.2d 392, 396 (Ind. Ct. App.), *trans. denied*, involved a challenge to a conviction within the context of a PCR, not a direct appeal.

[3] Yost cites *Thompson v. State*, 82 N.E.3d 376, 379 (Ind. Ct. App. 2017), *trans. denied*; *Kunberger v. State*, 46 N.E.3d 966, 971 (Ind. Ct. App. 2015); and *Warton v. State*, 42 N.E.3d 539, 540-41 (Ind. Ct. App. 2015). To the extent those cases hold that a defendant may directly appeal his conviction when he enters an "open" guilty plea, they are inconsistent with Supreme Court caselaw such as *Hayes* and *Tumulty*, both of which involved "open" guilty pleas. *See Hayes*, 906 N.E.2d at 820; *Tumulty*, 666 N.E.2d at 395. Moreover, they are distinguishable from the instant case in one very important respect; they all emphasized that they involved open pleas from which the defendants received no benefit. *See, e.g.*, *Thompson*, 82 N.E.3d at 379; *Warton*, 42 N.E.3d at 540-41. Yost clearly did receive a benefit from his open guilty plea. Tr. at 74-55; 80-81 (both the prosecutor and trial court noting that, if Yost had not entered his guilty plea when he did, the State would have filed the additional charge of attempted murder for which the sentence of imprisonment would have been much longer).

895 N.E.2d 1219, 1222 (Ind. 2008) (noting that sentencing decisions lie within the sound discretion of the trial court). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

[15] Unless a defendant's offenses are crimes of violence as defined by statute,[4] Indiana Code Section 35-50-1-2 limits the maximum consecutive terms of imprisonment that a trial court may impose for a single "episode of criminal conduct." I.C. § 35-50-1-2(c), (d). The total of the consecutive terms of imprisonment to which a defendant may be sentenced for felony convictions arising out of an episode of criminal conduct is seven years when the most serious crime is a Level 5 felony. I.C. § 35-50-1-2(d)(2); *see also Daugherty v. State*, 52 N.E.3d 885, 895 (Ind. Ct. App. 2016) (holding the "aggregate sentence" for offenses that were a single episode of criminal conduct could not exceed maximum term of incarceration under the statute), *trans. denied*; *Wood v. State*, 988 N.E.2d 374, 379 (Ind. Ct. App. 2013) (holding "cumulative sentences" for five Class D felony convictions that were a single episode of criminal conduct could not exceed statutory maximum term of incarceration). Here, all of Yost's convictions are Level 5 felony convictions for criminal

---

[4] Criminal recklessness is not listed as a crime of violence. I.C. § 35-50-1-2(a).

recklessness. Therefore, the only question is whether Yost's crimes were part of a "single episode of criminal conduct" for which his consecutive sentence must be limited to seven years.

[16] An "episode of criminal conduct" is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b). *See also Purdy v. State*, 727 N.E.2d 1091, 1092 (Ind. Ct. App. 2000) (quotation and citation omitted) (stating a single episode of criminal conduct is "an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series"), *trans. denied*. For criminal actions to be considered a single episode of criminal conduct, it is not necessary that the victim of each action is the same. *Harris v. State*, 861 N.E.2d 1182, 1188 (Ind. 2007). Nor is it required that the alleged conduct was so closely related in time, place and circumstances "that a complete account of one charge cannot be related without referring to details of the other charge," although that is a factor the court may consider. *Id*.

[17] Both the Supreme Court and this court have held that criminal actions that were not "precisely simultaneous or contemporaneous" but took place only seconds or minutes apart were a single episode of criminal conduct. *See Reed v. State*, 856 N.E.2d 1189, 1200 (Ind. 2006) (holding rounds of gunshots that were fired a few seconds apart at two different officers in two different cars were a single episode); *see also Harris*, 861 N.E.2d at 1188 (holding sexual acts against two different victims that took place five minutes apart in the same location

were a single episode of criminal conduct); *Dimmit v. State*, 25 N.E.3d 203, 219 (Ind. Ct. App. 2015) (holding two batteries occurring during a bar fight within a few minutes of each other and against two different victims were a single episode), *trans. denied*; *Henson v. State*, 881 N.E.2d 36, 39 (Ind. Ct. App. 2008) (holding two burglaries of different garages in the same morning were a single episode of criminal conduct), *trans. denied*.[5]

[18] Here, Yost fired multiple rounds of gunshots within minutes of each other. The rounds were fired at different people but from the same location and apparently for the same reason—i.e., Yost contended he was experiencing withdrawal symptoms because he had stopped taking his mental health medication. The multiple rounds of gunfire took place within a total period of twenty minutes, which is a relatively short period of time. *See Purdy*, 727 N.E.2d at 1092 (holding defendant's assault of girlfriend and subsequent acts of resisting arrest and battery of the police were a single episode of criminal conduct as they took place during "a relatively short period of time and all were related to his assault on [his girlfriend]"). The four rounds of gunfire were a "connected series of offenses that [were] closely related in time, place, and circumstance," i.e., a single episode of criminal conduct.[6] I.C. § 35-50-1-2(b). Therefore, the trial

---

[5] We disagree with the State's assertion that this case is closer to the facts of *Williams v. State*, 891 N.E.2d 621, 631 (Ind. Ct. App. 2008), where the criminal acts took place *a day* apart.

[6] We note that, although Yost's acts were a single "episode of criminal conduct" for purposes of the consecutive sentencing statute, there was nevertheless a factual basis for the five counts of criminal recklessness to which Yost knowingly pled guilty in order to obtain the benefit of a sentence lower than that for attempted murder. And, while we do not address the merits of his convictions of those five counts, we do

court erred in imposing an aggregate sentence in excess of seven years. I.C. §
35-50-1-2(d)(2); *Daugherty*, 52 N.E.3d at 895.

# Conclusion

[19]  Because Yost's challenge to his convictions cannot be brought on direct appeal
given his guilty plea, we dismiss his appeal of his convictions without prejudice
as to his ability to present his claim in a petition for post-conviction relief.
However, we reverse Yost's sentence and remand with instructions for the trial
court to limit the aggregate term of imprisonment to not more than seven years
per Indiana Code Section 35-50-1-2(c), (d)(2).

[20]  Dismissed in part, reversed and remanded in part.

Crone, J., and Altice, J., concur.

---

note that his sentence under the consecutive sentencing statute would be limited to seven years whether he
was convicted of two Level 5 felony counts or five such counts. I.C. § 35-50-1-2(c), (d)(2).